COMMONWEALTH *vs.* RONALD MALCOMB MACDONALD (No. 2).

Suffolk.   May 5, 1975. — July 22, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Constitutional Law,* Due process of law.   *Practice, Criminal,* Continuance, Transcript of evidence at earlier trial, Disclosure of statements by witnesses, Security measures, Location of defendant in court room, Fair trial.   *Error,* Whether error harmful.

The denial of a motion for a continuance of a trial for assault and battery, so that at trial the defendant could impeach the Commonwealth's principal witness through a transcript to be obtained of his testimony at a recently concluded trial in which the defendant was convicted of murder in the first degree, if constitutional error, was harmless where it appeared that the defendant was represented by the same counsel at both trials and this court, on an examination of the transcripts, determined that no harm resulted to the defendant from the lack of a transcript of the murder trial at the later trial.   [405-407]

Absent a showing of special circumstances or prejudice, a defendant in a criminal case showed no abuse of discretion in the denial of

his pre-trial motions for copies of, or inspection of, statements of the Commonwealth's prospective witnesses.   [408]

Where a prosecutor represented that the only matter within the scope of the defendant's pre-trial motion for information concerning promises, rewards and benefits offered by the Commonwealth to prospective witnesses was a statement to its principal witness that the trial judge would be informed of that witness's cooperation, there was no error in the denial of the motion.   [408]

There was no abuse of discretion at the trial of defendants for assault and battery in assigning to the dock the defendant who recently had been found guilty of murder in the first degree without a recommendation that the sentence of death be not imposed [408-409]; or in denying a motion that the jury be. polled as to possible prejudice because one juror saw that defendant handcuffed in the presence of four or five guards [409-410].

At a trial for assault and battery, it was proper to permit a non-expert to testify that the barrel of the gun with which the defendant struck the victim appeared to be in good condition before the incident and out of line afterward; to refuse declaration of a mistrial because of that witness's invited answer on cross-examination that he and the defendant had "pulled holdups together"; and to exclude the defendant's question to that witness, "Have you ever been prescribed medications that would be considered narcotics?" [410]

INDICTMENT found and returned in the Superior Court on October 9, 1970.

The case was tried before *Roy, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert J. Ciolek* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant (MacDonald) appeals under G. L. c. 278, §§ 33A-33G, from his conviction of assault and battery by means of a dangerous weapon. He is the same MacDonald whose convictions of murder in the first degree and assault and battery have been upheld today by our decision in *Commonwealth* v. *MacDonald (No. 1), ante,* 395 (1975).   The crime which is the subject of this appeal occurred a few hours before

the shootings described in our first *MacDonald* opinion. However, the trial of this case followed the trial in that case (the murder trial). Some of the witnesses at this trial, including Mandile, had testified for the Commonwealth in the murder trial.

The testimony of Mandile and others warranted the jury in finding that MacDonald struck one Bonfilio on the head with a hand gun several times. According to Mandile's testimony at the murder trial, it was the same gun which was used by MacDonald in the shootings involved in that case.

The various points raised by MacDonald in this appeal will be considered with a statement of additional facts appropriate to each.

1. MacDonald contends that the denial of his motion for a transcript of Mandile's testimony at the recently concluded murder trial constituted a violation of his constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States and under arts. 10 and 12 of the Declaration of Rights of the Constitution of the Commonwealth. In his testimony at the murder trial, Mandile did not describe the assault and battery which is the subject of this case, although he did describe circumstances surrounding the incident. The murder trial concluded on January 28, 1972. The trial in this case commenced on February 22, 1972, at which time MacDonald moved for a transcript of Mandile's testimony at the murder trial. MacDonald was represented by the same counsel, not his present counsel, in each proceeding.[1]

It is important to note the precise issue involved here. We are not concerned with whether MacDonald was entitled to a transcript of the murder trial in order to

---

[1] For the purposes of appeal, MacDonald filed a motion for a transcript of the murder trial on February 1, 1972. The transcript of that trial was ordered in that case on April 21, 1972, and became available on July 25, 1972.

appeal his conviction in that case. He was so entitled. *Griffin* v. *Illinois*, 351 U. S. 12 (1956). He did obtain a transcript eventually, and he has appealed unsuccessfully from that conviction. *Commonwealth* v. *MacDonald* (*No. 1*), *supra*. Nor are we concerned with possible discrimination against MacDonald because he was indigent.[2] There is no showing that a defendant with funds would have received a transcript of the murder trial in the same circumstances.[3] The issue is rather a question of due process of law, namely, did the denial of MacDonald's motion for a continuance, so that he would have a transcript of Mandile's prior testimony at his second trial, deprive him of a fair trial.

We are aware of no authority holding that a criminal defendant is constitutionally entitled to a nonexistent transcript of a witness's testimony at a prior trial because that witness is expected to testify to some related events at a subsequent trial on a different charge. In fact, several cases have held that where there is no transcript of an earlier proceeding, the defendant cannot compel the State to create one. *Commonwealth* v. *Britt*, 362 Mass. 325, 328 (1972) (District Court probable cause hearing). *Commonwealth* v. *Roberts*, 362 Mass. 357, 369 (1972) (Juvenile Court proceedings). *Commonwealth* v. *Lamattina*, 2 Mass. App. Ct. 203 (1974) (pre-trial hearing).

Because MacDonald was represented by the same counsel at both trials,[4] and the trials were separated by less than one month, realistically the transcript was not needed for discovery purposes. The only purpose for

---

[2] The equal protection clause requires that an indigent defendant be furnished a transcript of prior proceedings in the same case, if a defendant with funds could obtain one (*Roberts* v. *LaVallee*, 389 U. S. 40 [1967]), unless a satisfactory alternative is reasonably available. *Britt* v. *North Carolina*, 404 U. S. 226 (1971).

[3] The transcript of the murder trial covers 1,388 pages.

[4] He is represented by different counsel on this appeal.

which MacDonald argues he was entitled to the transcript was to be in a position to attempt to impeach Mandile. Unlike most cases involving the question of denial of a transcript, we have the "denied" transcript before us because we heard the appeal in the murder case at the same sitting.

MacDonald does not argue persuasively that, if the transcript had been available to him at the second trial, he would have been able to use it to impeach Mandile with any effect. He does not assert that there is any significant discrepancy between Mandile's testimony at the two trials, and our perusal of Mandile's testimony confirms that there was not. Moreover, it is doubtful that MacDonald would have chosen to use the transcript of the murder trial for impeachment, because such an attempt might well have alerted the jury to MacDonald's recent trial on other charges.

In these circumstances, where we are able to examine the transcript not made available to MacDonald before this trial, and we have determined that no harm resulted from the lack of the transcript, we conclude that, even if there were a constitutional right to the transcript, the judge's denial of that right constituted harmless error.[5] See *Gardner* v. *United States*, 407 F. 2d 1266, 1267-1268 (D. C. Cir. 1969), cert. den. 395 U. S. 911 (1969); *United States* v. *Carella*, 411 F. 2d 729, 733 (2d Cir. 1969), cert. den. sub nom. *Erhart* v. *United States*, 396 U. S. 860 (1969); *United States ex rel. Cadogan* v. *LaVallee*, 428 F. 2d 165, 167 (2d Cir. 1970), cert. den. 401 U. S. 914 (1971); *United States* v. *Bamberger*, 482 F. 2d 166, 168-169 (9th Cir. 1973), cert. den. 414 U. S. 1041 (1973).

---

[5] Because we do not decide in the abstract whether MacDonald was entitled as matter of due process to the transcript of Mandile's testimony at the murder trial and because this record demonstrates beyond a reasonable doubt that MacDonald was not harmed, we need not decide whether the denial of a transcript in such a situation is presumptively prejudicial or the defendant bears the burden of proving actual harm.

2. MacDonald argues that he was entitled as matter of constitutional right (a) to receive a copy of any statement known to the Commonwealth and made by Mandile on the subject of the indictment and (b) to inspect all statements of the Commonwealth's prospective witnesses. At the time of this trial, these were matters within the judge's wide discretion. See *Commonwealth* v. *MacDonald (No. 1)*, *supra*, at 396-397. MacDonald did not argue that any special circumstances required the allowance of these motions, and he makes no showing that he was prejudiced by the judge's rulings.

MacDonald moved that he be furnished information concerning promises, rewards and benefits offered by the Commonwealth to any witness in exchange for his testimony. The prosecutor represented that the only matter within the scope of the motion was a statement to Mandile that the judge who eventually heard his cases would be informed of Mandile's cooperation. The judge thereupon denied MacDonald's motion. In light of the prosecutor's statement, there was no need to allow the motion. There is no evidence that Mandile, or any other witness, was offered any other promise, reward, or benefit by the Commonwealth.

3. The defendant objects that because only he, among the three defendants, was obliged to sit in the defendant's enclosure in the court room, he was denied a fair trial. Initially the judge was not inclined to permit the defendant to be in the court room without handcuffs. The judge noted that the defendant had been found guilty of murder in the first degree, that he was powerfully built and that the criminal sessions were shorthanded for security purposes. MacDonald objected to the prejudice that the handcuffs would create. Before the jury were chosen, the judge changed his mind and permitted MacDonald to be present without handcuffs. It was at this point that MacDonald objected that he alone was assigned to the dock. The judge replied that if there

were room, all three defendants would be there and denied MacDonald's objection.

Where a defendant is to sit is a matter of discretion. *Commonwealth* v. *Jones,* 362 Mass. 497, 500-501 (1972). *Commonwealth* v. *Bumpus,* 362 Mass. 672, 680 (1972), judgment vacated and remanded on other grounds 411 U. S. 945 (1973), affd. on rehearing 365 Mass. 66 (1974). There was no abuse of discretion here. MacDonald could have requested an instruction in order to eliminate any possible inference against him, but he did not do so.

4. MacDonald claims that he was prejudiced by an incident in which one of the jurors saw him handcuffed in the presence of four or five guards when he was being returned to the court room following a noon recess. He brought the matter to the attention of the judge for a ruling. Without objection by MacDonald, the judge construed the request for a ruling as a motion that the jury be polled on any resulting prejudice. The judge denied the motion, saying that a poll would seem "to point up the situation."

There was no abuse of discretion in this ruling. See *Commonwealth* v. *Brown,* 364 Mass. 471, 477 (1973); *Commonwealth* v. *Ferguson,* 365 Mass. 1, 12-13 (1974); *Commonwealth* v. *Curry, ante,* 195, 201 (1975); *Commonwealth* v. *Dupont,* 2 Mass. App. Ct. 566, 572 (1974). MacDonald did not move for a mistrial or even request a corrective instruction to the jury. Where only one juror by chance may have seen the defendant handcuffed, drawing any attention to the circumstances, by a poll of the jury or by instructions, might have been inadvisable. As one convicted of murder in the first degree without a recommendation that the sentence of death be not imposed, the defendant could hardly complain that he was handcuffed while being escorted to and from the court room. Of course, great care should be taken to avoid any encounter between a defendant and any juror outside the court room. If it occurs, some appropriate cautionary instruction often is preferable to silence, if an instruction

is requested or not objected to by the defendant. See *Commonwealth* v. *Marvrellis,*        Mass. App. Ct. (1975);[a] *O'Shea* v. *United States,* 400 F. 2d 78, 80 (1st Cir. 1968), cert. den. 393 U. S. 1069 (1969); *United States* v. *Larkin,* 417 F. 2d 617, 618 (1st Cir. 1969), cert. den. 397 U. S. 1027 (1970).

5. There was no error in the judge's rulings on certain evidentiary points. Although argued in terms of an unconstitutional denial of a fair trial, these issues raise no constitutional question of any merit. (a) It was proper to permit Mandile to testify that the barrel of the gun with which MacDonald struck the victim appeared to be in good condition before the incident and out of line afterward. This was not opinion evidence requiring expert testimony. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 591 (1956). (b) MacDonald's cross-examination of Mandile on the distinction between being MacDonald's friend and being his partner led Mandile to say that he and MacDonald "pulled holdups together." This answer was invited by the questioning. Counsel for MacDonald asked for a mistrial or for instructions to the jury. The judge declined to grant a mistrial but in effect instructed the jury to disregard the answer. MacDonald did not object to the instruction then given. (c) The judge excluded MacDonald's question of Mandile, "Have you ever been prescribed medications that would be considered narcotics?" This ruling was proper. MacDonald did not attempt to narrow this subject to any inquiry relevant to this case or to the witness's competence to testify.

*Judgment affirmed.*