COMMONWEALTH *vs.* KENNETH V. MAGNASCO.

Suffolk.    February 9, 1976. — March 11, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Mistrial, Location of defendant in court room.   *Evidence,* Judicial discretion.

At the trial of indictments for armed assault with intent to murder and assault and battery by means of a dangerous weapon on a nine-year-old boy, a mistrial was not required by the prosecutor's questions to the defendant regarding an unrelated injury to another boy where the judge terminated the questioning before any objection by the defendant and before any testimony prejudicial to him was elicited. [146-147]

At a criminal trial, the judge did not abuse his discretion in refusing to admit certain evidence proffered by the defendant to show someone else might have committed the crime where findings were warranted that the evidence was too remote in time and too weak in probative value. [147-148]

At a criminal trial, the judge did not abuse his discretion in refusing to allow the defendant to sit at the counsel table. [148]

INDICTMENTS found and returned in the Superior Court on October 15, 1974.

The cases were tried before *Roy,* J.

---

*Frederick W. Riley (Anthony A. Bongiorno, Jr.,* with him) for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.    After a jury trial held pursuant to the provisions of G. L. c. 278, §§ 33A-33G, the defendant was convicted and sentenced on separate indictments which charged (1) armed assault with intent to murder (G. L. c. 265, § 18) and (2) assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A). The case is here on three assignments of error which we discuss later in the opinion. There was no error.

There was evidence from which the jury could have found that at 4:00 P.M. on September 16, 1974, the victim, a nine-year-old boy, left his home and joined three of his friends at the Wally Street entrance gate to Suffolk Downs race track. While there the four boys gathered and sold used programs to patrons of the race track.

At approximately 5:30 P.M. a man, later identified by all four boys as the defendant, drove up in a white, four-door, 1968 Oldsmobile and called them over to the driver's side. The boys spoke with the defendant for approximately fifteen minutes. During that time the defendant asked if one of the boys would wax his car for $10. After having been chosen by his friends, the victim entered the vehicle, and the defendant drove to Bayswater Street in East Boston where it parallels the beach, near its intersection with Annavoy Street. They alighted from the automobile and walked towards the beach to get some water to wash the car. When they reached an area of tall reeds the defendant ordered the victim to commit an unnatural act and threatened to kill the boy when he refused to do so. The last thing the victim could remember about the incident after he had committed the act was seeing the defendant bending over to pick up a piece of wood.

The victim was severely beaten and left lying in the reeds. At 7:00 A.M. the following morning, he was discovered by a young man who was in the area walking his dog.

The police were notified, and the victim was taken by ambulance to a hospital, where he remained in a coma for five weeks. The victim's injuries were consistent with having been inflicted by a blunt instrument having some sort of prominences such as nails. The jury could also have found that a witness, who lived on Bayswater Street opposite the place on the beach where the victim was found, saw the defendant getting into a four-door, white Oldsmobile, which was parked on Bayswater Street near the Annavoy Street intersection, about 6:00 P.M. on the sixteenth. At 7:10 A.M. on the seventeenth, while the ambulance and numerous police cruisers were in the area, the witness saw the defendant drive the same vehicle along Bayswater Street past the scene at a speed of approximately fifteen miles an hour.

The defendant was arrested a week later when one of the boys, while in the company of police officers seeking to locate the assailant, pointed out the defendant's automobile and identified the driver as the man who had picked up the victim.

1. The defendant relied on an alibi and testified in his own behalf. On re-direct examination he categorically denied that he had ever touched the victim or that he had ever seen him on or before the sixteenth. Having so testified, he was then asked by his counsel "Did you ever harm a little boy in your life," to which the defendant responded, "Never." In re-cross examination the assistant district attorney asked the defendant if he knew a boy named Michael S., to which he answered, "Yes." He denied that the boy had been injured while he was acting as the boy's babysitter. He was then asked, "Did someone say you did something to him while you were babysitting?" The defendant replied, "No one actually said anything." He was then asked if he knew Helen S., the mother of the boy, and he stated that he did. At that point the judge interrupted with the statement, "I don't think we better pursue this matter any further." The defendant's counsel then requested a bench conference at which he moved for a mis-

Commonwealth *v.* Magnasco.

trial. The defendant assigns as error the judge's denial of that motion.

Before any objection was made by the defendant and before any testimony prejudicial to him was elicited, the judge terminated the questioning. There was at that time no good reason for the judge to declare a mistrial and his denial of the motion for such was right. The cases relied on by the defendant, for example, *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964), and *Commonwealth* v. *Spare*, 353 Mass. 263, 266-267 (1967), are distinguishable from the present case, as in those cases the questioning elicited prejudicial admissions about irrelevant past behavior. Also, unlike the present case, exceptions were taken in those cases to the admission of testimony concerning the witnesses' prior criminal conduct.

Nor can the defendant successfully complain that the judge did not give "curative or limiting instructions while the said testimony was still fresh in the jury's mind," as he requested no such instruction. Neither the questions nor the answers required the judge to issue an instruction sua sponte.

2. The defendant excepted to the judge's refusal to admit in evidence (on the ground that they were not relevant) two photographs of a white two-door Oldsmobile, bearing Michigan license plates, of about the same vintage as the car allegedly operated by the defendant. The photographs had been taken in the Suffolk Downs race track parking area on November 4, 1974. The chief of security of Suffolk Downs testified that the automobile had been used by a stableman employed at the track. That witness testified that the car had been regularly parked in the lot for three to four weeks prior to November 4 "and possibly longer." "It is established law that to show that A did not do a particular thing, evidence is admissible to show that some one other than he did it, or had motive, intent, opportunity and is as likely as A to have done it. . . . Before such evidence is admitted, however, it must be shown to be not too remote in time . . . not too weak in probative

quality . . . and so connected with the events on which A's responsibility is predicated as to indicate that it is closely related to the facts of the case against A and forms part of that happening . . .. Whether it meets these conditions must be decided, in the first place, by the trial judge. The admission or rejection rests in his judicial discretion, and the result of his exercise of that discretion will not ordinarily be disturbed by an appellate court. Nevertheless the decision is not absolute. It may be set aside if the appellate court is satisfied that justice requires a different decision." *Commonwealth* v. *Murphy,* 282 Mass. 593, 597-598 (1933). The judge could have found that the proffered evidence failed to meet any of those requirements, and we are satisfied that justice does not require a decision different from that made by the judge. See *Commonwealth* v. *Sandler,* 368 Mass. 729, 737 (1975); contrast *Commonwealth* v. *Graziano,* 368 Mass. 325, 329 (1975).

3. Prior to the impaneling of the jury the defendant made an oral motion that he be permitted to sit at counsel table. "Where a defendant is to sit is a matter of discretion." *Commonwealth* v. *MacDonald* (No. 2), 368 Mass. 403, 409 (1975). We discern no abuse of that discretion. As was noted in *MacDonald,* the defendant could have requested an instruction to eliminate any possible inference against him but did not do so. The fact that later in the trial the four boys made in-court identifications of the defendant while he was seated in his isolated position in the dock does not indicate that they could not have done so had the defendant been seated at counsel table. It was counsel's "responsibility by way of cross-examination [as well as in closing argument] to bring to the attention of the trier of facts any circumstances which tend[ed] to cast doubt upon a witness's identification testimony." *Commonwealth* v. *Jones,* 362 Mass. 497, 500-501 (1972).

*Judgments affirmed.*