## COMMONWEALTH vs. GEORGE EDGERLY.

Essex.   March 8, 1983. — September 9, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law*, Speedy trial. *Practice, Criminal*, Speedy trial, Mistrial, Security measures in court, Assistance of counsel, Instructions to jury, Capital case.

Where a delay of more than forty-eight months between indictment and trial, caused partly by interlocutory appellate consideration of an issue in the case, the trial and conviction of the defendant on other charges, and two changes in defense counsel, did not prejudice the defendant's case, the defendant was not deprived of his right to a speedy trial as guaranteed by the Sixth Amendment to the Federal Constitution and art. 11 of the Declaration of Rights of the Massachusetts Constitution. [104-106]

At a criminal trial, there was no prejudicial error either in the judge's denying a motion by the defendant for a mistrial based on the ground that the defendant had been seen by the jury in the custody of a court officer, or in his declining to question the jury as to what they had seen, where the jurors later learned, through the defendant's own testimony, that at the time of trial the defendant was in custody and was serving sentences for other serious crimes. [106-107]

There was no merit to a criminal defendant's contention that he was denied his constitutional right to the effective assistance of counsel because, during the time of the trial, the defendant's attorney also represented a potential witness in the case. [107-109]

At a murder trial, the judge's instruction to the jury that, in determining whether the defendant was guilty beyond a reasonable doubt, they could consider whether the defendant testified falsely before them and thus showed a consciousness of guilt, in the context of the charge as a whole, neither shifted the Commonwealth's burden of proof, nor improperly created a mandatory presumption of consciousness of guilt. [109-110]

INDICTMENT found and returned in the Superior Court on May 15, 1974.

The case was tried before *Brogna, J.*

*Robert I. Warner* for the defendant.

*Sharon D. Meyers,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.  The defendant appeals from his conviction of murder in the first degree, arguing that he was deprived of his constitutional right to a speedy trial and that the judge committed errors in the course of his trial.  We affirm the conviction and find no reason to grant relief under G. L. c. 278, § 33E.

The circumstances of the crime are not essential to an understanding of the appellate issues.  It is sufficient to note that the defendant was convicted of the murder of Frank Smith, an area service manager for the General Motors Corporation.  There was evidence that the defendant, who had been employed by Butler Chevrolet in Lowell, had participated with others in submitting fraudulent warranty claims to General Motors.  General Motors had assigned Smith, the victim, to monitor warranty claims at Butler Chevrolet. Smith, who had had previous dealings with the defendant and Butler Chevrolet, arrived at Butler Chevrolet on January 30, 1974.  His body was found in a tidal creek in Danvers the next morning.  There was evidence that the defendant had shot him in the head and pushed his body off a pier into the water.

1.  The defendant was indicted on May 15, 1974.  His trial commenced on June 5, 1978.  Because of this delay of slightly more than forty-eight months, the defendant argues that he was denied his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States, and by art. 11 of the Declaration of Rights of the Constitution of the Commonwealth.  See *Barker* v. *Wingo,* 407 U.S. 514 (1972); *Commonwealth* v. *Gove,* 366 Mass. 351, 356 n.6 (1974).  We shall consider the relevant factors: the length of the delay, the reasons for the delay, the extent of the defendant's assertion of his right to a speedy trial, and the prejudice, if any, to the defendant.  *Barker* v. *Wingo, supra* at 530.  *Commonwealth* v. *Rodriguez,* 380 Mass. 643, 651-654 (1980).

Although the forty-eight months' delay in this case does not automatically require the dismissal of the indictment, it certainly requires further inquiry into the defendant's claim of a denial of his constitutional right to a prompt trial. See *Commonwealth* v. *Look*, 379 Mass. 893, 898, cert. denied, 449 U.S. 827 (1980). Most of the delay is attributable to interlocutory appellate consideration of an issue in this case (*Commonwealth* v. *Edgerly*, 372 Mass. 337 [1977]), the trial and conviction of the defendant on other charges (see *Commonwealth* v. *Edgerly*, 13 Mass. App. Ct. 562 [1982] [rape]; *Commonwealth* v. *Edgerly*, 6 Mass. App. Ct. 241 [1978] [larceny]), and two changes in defense counsel.

The defendant points only to an aggregate of approximately twelve months of unexplained delay. These periods are from June, 1974, to January 13, 1975, two months in the summer of 1975, and the four months from February, 1978, until the commencement of the trial. The case was not a simple one, and in June, 1974, the defendant filed nineteen discovery and other pretrial motions. In the circumstances, the early period of delay does not appear to be unreasonable. With new defense counsel appointed in August, 1975, and subsequent new counsel appointed in December, 1977, we think that the latter two periods of delay are explained sufficiently to place no substantial responsibility for them on the Commonwealth.

Most of the delay is thus fully explained and the balance of the delay is not shown to be caused by the Commonwealth. The defendant asserted his right to a speedy trial with motions filed in December, 1975, and in November, 1977. However, in these circumstances, at the very least, the defendant must demonstrate significant prejudice from the delay. This he has not done. The two instances of alleged prejudice are trivial. The pathologist's failure to have any independent memory of the autopsy he performed did not prejudice the defendant. The unavailability of one Donald Tremblay, a former employee of Butler Chevrolet, required the defendant to offer in evidence Tremblay's prior recorded testimony. The reason why Tremblay was un-

available was not shown, nor was it shown when he became unavailable. In any event, Tremblay would not have been an alibi witness, nor is there any suggestion that Tremblay would have provided testimony favorable to the defendant. His prior testimony read to the jury concerned fraudulent larceny schemes at Butler Chevrolet. We see no demonstrated or likely prejudice from Tremblay's absence. See *Commonwealth* v. *Look*, 379 Mass. 893, 901-902 (1980). We therefore reject the defendant's claim that he was denied his constitutional right to a speedy trial.

2. The defendant argues that the judge should have allowed his motion for a mistrial because members of the jury saw him in custody in the courthouse and that his right to due process of law was denied when the judge failed to take steps to protect him from the prejudice that resulted from that event. At a hearing without the jury, at the commencement of proceedings on the fifteenth day of trial, defense counsel asked that the defendant be permitted to explain that jurors had seen him in custody that morning. The defendant said that court officers had him in custody by the elevator when the jury were coming in the front door, and "two or three of them took a good look at me." The judge questioned the court officer in charge of the defendant who said that, when he saw the jury, he grabbed the defendant and hugged him so that "possibly nobody could see him with the cuffs on." He was positive no juror saw the defendant with handcuffs on. Defense counsel argued that jurors seeing a court officer grabbing the defendant and hugging him was as prejudicial as jurors seeing him in handcuffs. The judge denied the defendant's motion for a mistrial and declined his request that the judge ask the jurors what they had seen. He concluded that they had not seen the handcuffs and that to ask the jurors about it would only highlight the matter.

It is doubtful that the judge abused his discretion in the way he handled this single, brief, and accidental occurrence. See *Commonwealth* v. *MacDonald (No. 2)*, 368 Mass. 403, 409-410 (1975); *Commonwealth* v. *Ferguson*,

365 Mass. 1, 12-13 (1974); *Dupont* v. *Hall,* 555 F.2d 15, 17 (1st Cir. 1977). The judge might well have been warranted in concluding that no "serious question of possible prejudice" was raised and thus a voir dire examination of the jurors was not needed. See *Commonwealth* v. *Jackson,* 376 Mass. 790, 800 (1978).

Here, it is apparent, in any event, that the defendant was not prejudiced by any error. The jurors came to know that the defendant was in custody at the time of the trial and was serving sentences for serious crimes. He testified on cross-examination that on July 12, 1977, he pleaded guilty in the United States District Court for the District of Massachusetts to conspiracy and mail fraud charges and was sentenced to serve one year, concurrently with a Massachusetts sentence of not less than three nor more than five years he was then serving on a 1976 conviction for larceny. He similarly testified that, on September 21, 1977, he was convicted of rape and assault with intent to commit rape and sentenced to serve not less than eighteen nor more than thirty years in State prison. In light of these disclosures, the defendant could not have been significantly prejudiced in the estimation of the jury if some members of the jury did notice him in custody of a court officer. See *Commonwealth* v. *Brown,* 364 Mass. 471, 477 (1973). There was no prejudicial error in denying the motion for a mistrial or in declining to question the jury.

3. There is no merit to the defendant's argument that he was denied his constitutional right to the effective assistance of counsel. He claims that because his trial counsel, Mr. Brower, also represented one Alfio Lupo, a potential witness, on unrelated matters, there was a conflict of interest requiring a new trial. The record does not support such a claim of constitutional violation.

In a lobby conference on the twentieth day of trial, the prosecutor brought to the judge's attention that Mr. Brower represented Lupo, who might be called as a witness. Mr. Brower stated that, when he first considered representation of the defendant, he informed the defendant that Lupo was

a client.  On the following day, Mr. Brower told the judge
that he would not expect to call Lupo to testify but that
there would be a problem in his conducting cross-examina-
tion if the Commonwealth called Lupo.  Lupo, whom the
defendant by his testimony implicated in the victim's death,
testified on voir dire on the twenty-fourth day of trial that
he had nothing to hide and would be willing to testify for
the Commonwealth.  However, the Commonwealth never
called Lupo as a witness in rebuttal, nor did the defendant
call him.

We are not concerned here with the conflict of interest in-
herent in defense counsel's simultaneous representation of a
defendant and a significant witness for the prosecution.  See
*Commonwealth v. Hodge*, 386 Mass. 165, 169-170 (1982);
*Commonwealth v. Soffen*, 377 Mass. 433, 437-438 (1979).
Lupo never testified.  The question is whether the defend-
ant has shown that he was denied his constitutional right to
the effective assistance of counsel because, during the time
of the trial, Mr. Brower also represented Lupo.  In this situ-
ation, the defendant must prove that he was materially
prejudiced by Mr. Brower's simultaneous representation of
Lupo.  See *Commonwealth v. Soffen, supra* at 437; *Miller
v. United States*, 564 F.2d 103, 106-107 (1st Cir. 1977),
cert. denied, 435 U.S. 931 (1978).

We shall assume, but do not decide, that the defendant
has made a sufficient showing of Mr. Brower's duty of loyal-
ty to Lupo to justify the conclusion that Mr. Brower's repre-
sentation of Lupo could have affected his decision whether
to call Lupo as a defense witness.  There is, however,
nothing in the record to show that calling Lupo was a "via-
ble tactic."  See *Commonwealth v. Cote*, 7 Mass. App. Ct.
150, 152 (1979).  To the contrary, it appears that calling
Lupo as a defense witness was likely to be counterproduc-
tive.  It seems that the Commonwealth wanted Lupo to tes-
tify to rebut the defendant's accusatory testimony, that
Lupo's expected testimony would be unfavorable to the de-
fendant, and that, only because of defense counsel's conflict
of interest, the Commonwealth decided not to call Lupo.

Consequently, on this record Mr. Brower's alleged conflict of interest may have benefited rather than harmed the defendant. There is no record support for the defendant's claim that, because his counsel also represented Lupo, he may have limited his questioning of the defendant.[1]

4. The defendant argues that the judge improperly charged the jury that, in determining whether the defendant was guilty beyond a reasonable doubt, they could consider whether the defendant testified falsely before them and thus showed a consciousness of guilt.[2] The judge stated that the defendant had no burden to prove anything. He said that the jury could consider false testimony of the defendant as consciousness of guilt, but that evidence of consciousness of guilt could only be considered with other evidence.

We have recognized that a defendant's wilfully untrue testimony as to a material fact "tends to show consciousness of guilt or liability on his part and has probative force in connection with other evidence on the issue of such guilt or liability." *Boston* v. *Santosuosso*, 307 Mass. 302, 349 (1940).

---

[1] In view of this conclusion, we need not consider whether through his testimony the defendant intentionally created the alleged conflict by referring to Lupo's involvement, that is, as the judge suggested, whether he "contrived purposely to create a mistrial situation."

[2] The relevant portion of the charge is as follows (with the challenged language in italics):

"Now, in the ordinary case I tell juries, and I will here, that part of the presumption of innocence is that the defendant by taking the stand doesn't shift the burden. He doesn't have to convince you that his story that he told is the truth. Or that that's how it happened. On the other hand, what you do is you say in view of the Commonwealth's evidence, that part which you believe, in view of the story, the testimony of the defendant, are we convinced beyond a reasonable doubt that he did it? *And you may in determining whether or not he is guilty beyond a reasonable doubt ask yourselves whether the defendant in any story he told or any testimony before you attempted to hide or to falsify anything before you, attempted to throw you or investigators in the course of the investigation off the track, attempted to place the blame without reason on another person.* This is what the lawyers call evidence of consciousness of guilt, trying to manufacture evidence, telling a false story.

"But I caution you that you are never to convict this defendant or any other defendant on evidence tending to show consciousness of guilt alone. You may use it in connection with other evidence only."

See *Sheehan* v. *Goriansky*, 317 Mass. 10, 16 (1944). False testimony by a criminal defendant as to a material fact may be considered as showing a consciousness of guilt. *Commonwealth* v. *Corcoran*, 332 Mass. 615, 619 (1955). Conceptually, there is no significant difference, in showing a defendant's consciousness of guilt, between wilfully false statements made before trial from which consciousness of guilt may be inferred and wilfully false statements made under oath during trial.

The defendant argues that the charge on consciousness of guilt unconstitutionally shifted the burden of proof to him, requiring him to persuade the jury of the truth of his testimony. Comment to a jury on the consequences of a criminal defendant's lying in the course of his testimony must be made with care, and customarily should be avoided because it places undue emphasis on only one aspect of the evidence. See *People* v. *Green*, 27 Cal. 3d 1, 40-41 (1980). The jury must not be led to conclude that, if they believe the defendant lied, the defendant should without more be found guilty. Such an instruction would reduce the Commonwealth's burden of proving every element of the crime beyond a reasonable doubt. See *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975). The defendant makes a related argument that the charge improperly created a mandatory presumption of consciousness of guilt if the jury found that the defendant lied. See *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 252 (1980).

We simply disagree with the defendant's claim that this charge reduced the Commonwealth's burden of proof. The judge told the jury that they could consider the falsity of the defendant's testimony, not that they had to, and that, in any event, consciousness of guilt alone would never be enough to convict the defendant. Reading the charge as a whole (*Commonwealth* v. *Bradshaw*, 385 Mass. 244, 278 [1982]), and noting the judge's charge concerning the presumption of innocence and reasonable doubt, we see neither a shifting of the Commonwealth's burden of proof nor a statement of a mandatory presumption.

5. The defendant argues certain issues that were not preserved for appellate review, contending that the asserted errors demonstrate that the conviction is not consonant with justice (*Commonwealth* v. *Davis*, 380 Mass. 1, 15 n.20 [1980]), and that we should grant him relief under G. L. c. 278, § 33E. We see no occasion to order a new trial under § 33E.

We discuss these § 33E issues briefly. (1) The judge did not abuse his discretion in denying the defendant's request for a two-week continuance in the commencement of trial. (2) After defense counsel argued to the jury in his closing argument that the defendant was fighting for his life and that conviction would put the defendant "in a cage for the rest of his life," the judge, with the concurrence of defense counsel, was warranted in telling the jury what the consequences were of convictions of murder in the first and second degrees. See *Commonwealth* v. *Smallwood*, 379 Mass. 878, 882-883 (1980); *Commonwealth* v. *Burnett*, 371 Mass. 13, 16-17 (1976). (3) We see no improper restriction on the cross-examination of the witness who testified that he saw the defendant shoot the victim and push him into the water. (4) The trial judge did not permit defense counsel to advise the jury that Donald Tremblay, in giving the testimony in a prior case that was read to the jury, did so under a grant of immunity. The significance of such a disclosure is not apparent. Even if the fact of the grant of immunity should have been disclosed to the jury, a point we need not decide, the defendant was not prejudiced by the omission.

We see no occasion pursuant to G. L. c. 278, § 33E, for a reduction in the verdict to a verdict of a lesser degree of guilt.

*Judgment affirmed.*