COMMONWEALTH *vs*. RODRIGUEZ U. CHARLES.

Suffolk. November 6, 1985 — March 6, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Identification. Evidence*, Prior inconsistent statement, Consciousness of guilt. *Practice, Criminal*, Instructions to jury, Voir dire, Argument by prosecutor, Preservation of evidence, Assistance of counsel.

At the trial of indictments arising out of the rape and robbery of three women, the admission of an out-of-court statement by one of the victims identifying the defendant as her assailant, made at a post-lineup interview out of the presence of defense counsel, was proper and therefore did not taint her in-court identification of the defendant, where the victim's out-of-court identification of the defendant constituted a sudden and unelicited statement which, under the circumstances, could not have been suggested or influenced by the prosecutor. [5-7]

At a criminal trial, the judge did not err in allowing a police officer to testify in a manner which impeached the testimony of another prosecution witness where, although no limiting instruction was requested or given, the evidence was not used substantively since both counsel in their closing arguments only referred to the statement for its impeachment value. [7]

There was no merit to a criminal defendant's contentions that certain evidence offered by the prosecution to show the defendant's consciousness of guilt, in that it implied that he knew the police were looking for him, was irrelevant, and that it somehow informed the jury of prior criminal activity. [7-8]

The judge at a criminal trial in which identification was in issue properly denied the defendant's requested instruction to the jury regarding identification when the witness and the defendant are of different races. [8]

At a criminal trial, the judge's reference in his charge to the defendant's "constitutional right not to incriminate himself," while better omitted, did not, in the context of the entire charge, create a risk that the jury would draw an inference unfavorable to the defendant. [9-10]

At a criminal trial there was no reversible error in the judge's repeatedly referring to "the defendant" during his charge to the jury, instead of referring to "the assailant" or employing some other neutral term, where the charge as a whole made clear that the jury first had to find that the defendant, Rodriguez Charles, was the assailant before they could decide other substantive issues. [10]

Where during a criminal trial at most only two jurors had seen the defendant in handcuffs outside the courtroom, and where the defendant did not pursue his motion for voir dire, but assented to the suggestion of the judge that no voir dire be conducted, there was no error in the judge's not conducting a voir dire or giving curative instructions. [10-11]

Certain alleged misstatements of fact and law made by the prosecutor in closing argument at the trial of a rape case did not, in the circumstances, constitute prejudicial error. [12-13]

Where a criminal defendant relied on mere conjecture and surmise, contradicted by evidence in the record of his trial for rape and for robbery, that a certain tape recording, which had been lost by the police, would have been exculpatory, and where the recording was lost not because of bad faith but under extraordinary circumstances which mitigated the culpability for the loss, any prejudice to the defendant was too insubstantial and uncertain to warrant reversal of his convictions. [13-14]

The defendant in a criminal case was not deprived of effective assistance of counsel either by the timing of his attorney's motion to suppress identification testimony, or by his attorney's reasonable decision not to pursue a challenge to the procedure followed at a pretrial photographic identification session. [14-15]

INDICTMENTS found and returned in the Superior Court Department on July 21, 1981.

The cases were tried before *Irving Goldblatt*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Linda H. Morton* for the defendant.

*Judy G. Zeprun*, Assistant District Attorney (*Charles M. Campo, Jr.*, with her) for the Commonwealth.

LYNCH, J. After trial in Superior Court the defendant was convicted of various crimes[1] arising from his forced entry into a Brighton apartment where he confined, raped, and robbed three women. On appeal, the defendant argues that the verdicts should be set aside because: (1) the judge improperly denied the defendant's motion to suppress evidence of certain out-of-court statements which identified the defendant; (2) certain evidence was admitted which violated the defendant's rights to due process and a fair trial; (3) the judge improperly charged the jury; (4) the judge erred in declining to conduct a voir dire or give curative instructions regarding the fact that jurors had accidently seen the defendant in shackles outside the courtroom; (5) prosecutorial misconduct prior to and at trial violated the defendant's constitutional rights, and (6) of ineffective assistance of counsel. We affirm the convictions.

There was evidence of the following facts. Three women, "Karen," "Shannon," and "Valerie," were roommates in Brighton. On December 8, 1980, as Karen left her apartment, she confronted in the well-lit hallway, a man, whom she later identified as the defendant, and described as a five feet nine inches tall, thin, black man with "scruffy" hair, a beard and wearing a tan trench coat.

The man forced Karen back into the apartment and held a screwdriver to her throat. He told her not to scream or he would kill her. Valerie testified that she saw a five feet nine or ten inches tall, thin, black man, with scruffy black hair, a beard and a moustache, wearing a tan trench coat and dark colored pants, push Karen into the apartment. After Valerie screamed the assailant told her to shut up and threatened to kill either Karen or both women.[2] The third victim, Shannon, was awakened in her bedroom, then bound and threatened by the defendant. While in the apartment the defendant took

---

[1] The defendant was convicted of entering a dwelling, while armed, and making assaults with intent to commit a felony; three counts of unlawful confinement; four counts of aggravated rape; and robbery.

[2] Karen testified that the man threatened to kill both of them. Valerie construed the threat to be against Karen.

jewelry from two of the victims, threatened the lives of all three victims, raped two of them vaginally, one anally as well, and one orally, and otherwise threatened, assaulted and abused them.

On December 9, 1980, the victims assembled at the District 4 police station and were asked, one by one, to view photographs. After reviewing approximately one hundred and fifty photographs of black males between the ages of twenty and thirty, Shannon selected a photograph of the defendant that she said she was "99 percent sure" was the assailant.[3] Valerie was unable to select any photograph. After viewing about fifty photographs in a group of about two hundred, Karen stopped at the photograph Shannon had picked and said, "The side view looks like him." On Detective Keough's request, she continued looking and selected another photograph of the defendant and ran from the room, crying. When she returned she stated, "That's him. I'm positive."[4]

The defendant was arrested on June 1, 1981. In the course of testifying at the probable cause hearing, Karen correctly stated that the defendant was not present in the courtroom (the judge had excused the defendant). At that hearing, Karen and Shannon testified that the assailant had a distinctive accent.[5]

The defendant did not appear at his arraignment on September 2, 1981, and a default warrant was issued. He was arrested in 1983, and on November 3, 1983, nearly three years after the incident, the victims attended a lineup at the Boston police headquarters at which the defendant was represented by counsel. Neither Valerie nor Shannon was able to identify the

---

[3] Detective Keough, present at the identification, essentially corroborated her testimony when he testified that he "believed" she said she was ninety percent certain. In any case, it was clear that she was not absolutely certain of the identification.

[4] She testified that there was no doubt in her mind that the photograph depicted the assailant. She noted that there were some differences in the hair and beard "but it was the face and the eyes you don't forget."

[5] Karen noted that the assailant's accent was "a lot like" defense counsel Winston Kendall's voice. The parties stipulated that both Mr. Kendall and the defendant were born in Trinidad, West Indies.

assailant.[6] Karen initially stated that she was unable to identify the defendant, because it had been too long since the incident. However, immediately after the lineup she stated to the prosecutor before he initiated any conversation with her, "I think it was No. 4 [the defendant], but it had been too long and I was scared to say anything." At trial Karen identified the defendant, who was seated among the spectators.

1. *The motion to suppress identification evidence.* The defendant filed a motion to suppress evidence of the out-of-court identification made by Karen on the day of the lineup and any in-court identification made by her. The judge denied the motion. The defendant argues that the out-of-court identification made after the lineup occurred was an extension of the lineup which resulted in a denial of the defendant's rights to assistance of counsel, confrontation of witnesses and due process. The defendant also asserts that the in-court identification was tainted by the out-of-court identification.

Under both *United States* v. *Wade,* 388 U.S. 218 (1967), and *Gilbert* v. *California,* 388 U.S. 263 (1967), an accused is entitled to counsel at any pretrial corporeal identification conducted after indictment. See *Moore* v. *Illinois,* 434 U.S. 220, 224-227 (1977). Defense counsel is entitled to be present at a lineup to ensure that the procedure does not suggest who the prosecutor believes committed the crime. *Moore* v. *Illinois, supra* at 224-225. The question presented here is whether or not Karen's unelicited utterance identifying the defendant, made out of the presence of defense counsel, was part of the lineup and as such entitled the defendant to the presence of counsel.

Although several State courts have held that a defendant has a right to have counsel present at a post-lineup interview, *People* v. *Williams,* 3 Cal. 3d 853, 856-857 (1971);[7] *State* v.

---

[6] Shannon commented that the reason she was unable to make an identification was because "[i]t was three years later."

[7] In the later case of *People* v. *Lawrence,* 4 Cal. 3d 273 (1971), cert. denied, 407 U.S. 909 (1972), the California Supreme Court refused to extend similar protection to an identification made upon the viewing of a simulated photographic lineup.

*McGhee,* 350 So. 2d 370, 373 (La. 1977); *Richardson* v. *State,*
600 P.2d 361, 364-365 (Okla. Crim. App. 1979), the Federal
Circuit Courts which have addressed this issue have held that
a defendant does not have such a right, as have several State
courts. See *Hallmark* v. *Cartwright,* 742 F.2d 584, 585 (10th
Cir. 1984); *United States* v. *White,* 617 F.2d 1131, 1134-1135
(5th Cir. 1980); *United States* v. *Bierey,* 588 F.2d 620, 624-625
(8th Cir. 1978), cert. denied, 440 U.S. 927 (1979); *United
States* v. *Tolliver,* 569 F.2d 724, 727-728 (2d Cir. 1978);
*United States* v. *Parker,* 549 F.2d 1217, 1223 (9th Cir.), cert.
denied, 430 U.S. 971 (1977); *United States* v. *Cunningham,*
423 F.2d 1269, 1274-1275 (4th Cir. 1970); *Graham* v. *United
States,* 377 A.2d 1138, 1139-1140 (App. D.C. 1977); *State*
v. *Cherry,* 298 N.C. 86, 106-108, cert. denied, 446 U.S. 941
(1979); *State* v. *Favro,* 5 Wash. App. 311, 313-315 (1971),
cert. denied, 405 U.S. 1040 (1972). Compare *United States*
v. *Ash,* 413 U.S. 300 (1973) (photographic identification does
not require presence of counsel). Although the cases holding
that defense counsel does not have a right to be present at a
post-lineup interview would appear to represent the better
reasoned view, it is unnecessary for us to decide the issue.
None of the cases suggests that defense counsel has a right to
be present at every interview of the victims by the prosecutor
after a lineup has taken place, or that the prosecutor must
anticipate unsolicited post-lineup remarks by victims identify-
ing the defendant. Here Karen said she was unable to identify
the defendant during the lineup and was then taken to a separate
room. She testified, however, that when the prosecutor walked
into that room she immediately identified the defendant. Under
this version of the incident there was no chance for the pros-
ecutor to suggest or influence her statement. The defendant
does not contest this testimony nor did he offer any evidence
to show that the identification after the lineup was suggested
by or came about as a result of continued questioning or urging
by the prosecutor. Thus, to the extent the policies underlying
*United States* v. *Wade, supra,* and *Gilbert* v. *California, supra,*
would apply to a post-lineup identification interview (and we
do not reach that issue here), those policies have no applicability

where the viewer made a sudden and unelicited statement which could not have been suggested or influenced by the prosecutor.[8] The admission of Karen's out-of-court statements was proper, and therefore did not taint her in-court identification.

2. *Evidentiary matters.*

a. *Prior inconsistent statements.* Robin Howell, the defendant's friend and Commonwealth's witness, testified that she had never seen the defendant play the guitar and she was not aware that he had ever played the guitar.[9] Detective MacKinnon testified, however, that Howell had stated earlier that the defendant played the electric bass guitar and that she had seen him play several times in her apartment. The defendant objected to MacKinnon's statement on the ground that the Commonwealth was precluded from impeaching its own witness. There was no error since that objection was without merit. G. L. c. 233, § 23 (1984 ed.). Although no limiting instruction was requested or given, the evidence was not used substantively since both counsel in their closing arguments only referred to the statement for its impeachment value.

b. *Consciousness of guilt.* When the detectives who arrested the defendant revealed their identity to him he said, " ----, man, I knew you were ------- cops." The prosecution offered the evidence to show the defendant's consciousness of guilt, in that it implied that he knew the police were looking for him. The defendant argues that the evidence was irrelevant, and, for the first time on appeal, that this testimony somehow informs the jury of prior criminal activity, in violation of *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964), and *Commonwealth* v. *Stone,* 321 Mass. 471, 472-473 (1947). Although it is unnecessary for us to consider that later argument

---

[8] The mistrust of post-lineup identification interviews has been based upon the fear that prosecutorial suggestion will create less trustworthy identification evidence. However, Karen's sudden and unelicited utterance is more akin to an excited and spontaneous utterance, a type of statement long considered trustworthy enough to justify an exception to the hearsay rule. See *Commonwealth* v. *Clary,* 388 Mass. 583, 589 (1983).

[9] Karen and Shannon testified that the assailant picked up and strummed Shannon's guitar. The defendant's fingerprints were not found on the guitar.

since it is raised for the first time on appeal, *Commonwealth* v. *Howell,* 386 Mass. 738, 739 (1982), cert. denied, 459 U.S. 1112 (1983), there would appear to be no merit to either contention. The evidence does have some tendency to show that the defendant knew the police were looking for him. It does therefore have some slight relevance to consciousness of guilt. The suggestion that the statement showed prior criminal activity is tenuous at best, but clearly missing is evidence of specific criminal activity found in *Welcome* and *Stone.* Since little or no prejudice arises from the admission of this testimony it was within the bounds of the judge's discretion to admit it.

3. *The charge.*

a. The defendant objects to the judge's failure to include in the charge the substance of his request regarding race and identification.[10] This court has set out in detail the charge we consider "appropriate to cases in which identification is in issue." *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 & n.1 (1979). See *Commonwealth* v. *Pressley,* 390 Mass. 617, 618-619 (1983). The defendant does not argue that the judge's charge failed in any essential way to meet the standard of *Rodriguez.* In any case, it was not established that particular problems arise when the witness and the defendant are of different races. See *United States* v. *Telfaire,* 469 F.2d 552, 561-562 (D.C. Cir. 1972) (Leventhal, J., concurring).[11] Here the judge was well within his discretion in denying the requested charge.

---

[10] The request read: "Race and Identification: In this case the identifying witness is of a different race than the defendant. In the experience of many it is more difficult to identify members of a different race than members of one's own. If this is also your experience, you may consider it in evaluating the witness' testimony. You must also consider, of course whether there are other factors present in this case which overcome any such difficulty of identification. For example: you may conclude that the witness has had sufficient contacts with members of the defendant's race that she would not have greater difficulty in making a reliable identification. *U.S.* v. *Telfaire,* 469 F.2d 552, 561 [D.C. Cir. 1972]."

[11] As Chief Judge Bazelon, who originally proposed a charge such as requested by the defendant in *United States* v. *Telfaire,* 469 F.2d 552, 561 (D.C. Cir. 1972) (Bazelon, C.J. concurring), noted in his dissent in *United States* v. *Brown,* 461 F.2d 134, 145 n.1 (D.C. Cir. 1971), "[t]he data on this point is unfortunately meager."

b. While discussing the presumption of innocence in his charge to the jury the judge stated that "apart from the statute [G. L. c. 233, § 20 (1984 ed.)], in Massachusetts a defendant has a constitutional right not to incriminate himself." The defendant claims this was error, but did not object to this charge, nor request that no charge be given on his right to remain silent. See *Commonwealth* v. *Buiel,* 391 Mass. 744, 747 (1984).

We have repeatedly held that "[t]he risks inherent in the phrase 'self-incrimination' should be avoided . . . . This can easily be done by substituting the phrase, where appropriate, 'the right to remain silent.' See *Commonwealth* v. *Buiel,* 391 Mass. 744, 747 n.4 [1984]." *Commonwealth* v. *Costello,* 392 Mass. 393, 401 n.4 (1984). *Commonwealth* v. *Sneed,* 376 Mass. 867, 871 & n.1 (1978). Judges could easily avoid potential reversible error by this simple method in most cases. Where judges overlook our directive, however, the use of phrase "self-incrimination" "[b]y itself . . . does not merit reversal." *Commonwealth* v. *Costello, supra* at 400. *Commonwealth* v. *Morrissey,* 351 Mass. 505, 515 & n.5 (1967). *Commonwealth* v. *Powers,* 9 Mass. App. Ct. 771, 773 (1980). But, "[e]ven an unintended suggestion that might induce the jury to draw an unfavorable inference is error. . . . Instructions which adhere to the letter, but not the spirit, of these protections, are cause for reversal" (citations omitted). *Commonwealth* v. *Sneed, supra* at 871.

In this case, the instructions, taken in context, effectively neutralized the otherwise pejorative connotations of the phrase "self-incrimination." In charging on the presumption of innocence and the right to silence, the judge elected to elucidate the applicable legal norms via the statutory and constitutional sources from which they derive. First, the judge quoted the statutory source of the right to silence and analyzed it for the jurors: "The defendant, again, did not testify at this trial. We have a statute which says that a defendant . . . 'shall at his own request but not otherwise be allowed to testify, but his neglect or refusal to testify shall not be [*sic*] create any presumption against him.' What is presumption? It is a rule of law. . . . [A] defendant's failure or neglect to take a [*sic*] stand shall

not create any rule of law, any presumption, against him." The judge immediately moved from statute to Constitution. "Apart from the statute in Massachusetts a defendant has a constitutional right not to incriminate himself. The defendant in a criminal case cannot be compelled to testify at his trial. He may testify if he so elects; but if he doesn't chose to, he may not testify. If he exercises that right not to testify, as this defendant has done, no inference — permissible deduction — no inference unfavorable to the defendant can be drawn by you as jurors by reason of his failure to testify." Earlier, the judge had charged the jury to accept the law as he stated it.

While we do not retreat from what we said in *Commonwealth* v. *Sneed, supra,* we conclude that in this case the judge stated the letter of the law and managed to restate it such that the spirit of the law was preserved.

c. The defendant assigns error to the fact that while charging the jury on the substantive issues in the case the judge repeatedly referred to "the defendant," not "the assailant" (or some other neutral term). Early in the charge, the judge gave lengthy instructions on identification based upon *Commonwealth* v. *Rodriguez,* 378 Mass. 296 (1979), making clear that the jury had to find at the outset that the defendant was the intruder who entered the victims' apartment. Second, after the defendant objected to the charge on this ground, the judge gave an appropriate curative instruction informing the jury that any references to a defendant, or the defendant, were meant in a general sense, and did not refer to Charles. No further objection to the charge was taken. Third, when the prosecutor referred to the assailant as the defendant in his examination of Valerie, the judge gave an appropriate curative instruction at defense counsel's request. A review of the charge as a whole leaves no room for doubt that the jury first had to find that Rodriguez Charles was the assailant before they could turn to the substantive issues. There was no reversible error.

4. *Voir dire.* At trial the prosecutor, in accordance with duties imposed upon him by *Commonwealth* v. *Wilson,* 381 Mass. 90, 108-109 (1980), and *Commonwealth* v. *MacDonald,* 368 Mass. 403, 409-410 (1975), informed the judge that the

defendant believed he had been observed in shackles by one of the jurors outside the courtroom. This was confirmed by transportation Officer Charles Goodman. Defense counsel then related a similar incident in which the defendant believed he had been viewed in shackles by a juror outside the courtroom. Both prosecutor and defense counsel suggested that a voir dire of the jury be conducted. However, defense counsel later acceded to the suggestion of the judge that no voir dire be conducted.[12] The judge did not conduct a voir dire, and no curative instructions were given.

In *Commonwealth* v. *MacDonald, supra,* we found that there was no abuse of discretion when a judge denied a motion to poll the jury after the defendant had been seen in handcuffs by one juror and in the presence of several guards: "Where only one juror by chance may have seen the defendant handcuffed, drawing any attention to the circumstances, by a poll of the jury or by instructions, might have been inadvisable." *Id.* at 409. See *Commonwealth* v. *Curry,* 368 Mass. 195, 201 (1975); *Commonwealth* v. *Ferguson,* 365 Mass. 1, 12-13 (1974); *Commonwealth* v. *Brown,* 364 Mass. 471, 477 (1973). Further, "great care should be taken to avoid any encounter between a defendant and any juror outside the court room. If it occurs, some appropriate cautionary instruction *often is preferable* to silence, *if an instruction is requested or not objected to by the defendant"* (emphasis added). *Commonwealth* v. *MacDonald, supra* at 409-410. Here, where at most two jurors saw the defendant in handcuffs and where the defendant did not pursue his motion for voir dire, but assented to the court's solution, we find no error. As we indicated in *Commonwealth* v. *MacDonald,* silence is a permissible option for the judge to pursue, particularly when the defendant ratifies that course of conduct.

---

[12] In fact, the judge put it on the record that "both parties desire to proceed just as we recessed yesterday" without voir dire. He had made it perfectly clear that he would "do what the two of you agree upon." The defendant argues that the judge's "lack of comprehension" and "facetious remarks" forced him to waive his rights.

5. *Prosecutorial misconduct.*

a. *Misstatements of facts and law.* The defendant argues that the prosecutor misstated law and fact at several points in his closing argument to the jury.

i. First the defendant challenges the prosecutor's remark that "ultimately it is each of you who must decide in your own mind the guilt of the defendant Rodriguez Charles." Allegedly that remark imposed a duty on the jurors to find the defendant guilty. It is perfectly clear that the prosecutor meant that the jurors were to decide whether or not the defendant was guilty — no reasonable juror could have thought otherwise. See *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 646-647 (1974).

ii. The prosecutor, in discussing the credibility of a defense witness, Wanda Fisher, asserted that the temperature on the date of the incident was not "freezing cold" that day but in fact was fifty degrees. There was no evidence introduced that substantiated the prosecutor's assertion. The prosecutor was relying on a weather report of December 8, 1980, which he used in cross-examining the witness, but which he neglected to offer in evidence.[13] The judge gave no specific curative instruction (and none was sought), but after denying a motion for mistrial charged the jury at some length on the fact that the jury's recollection of the facts controls, and that closing argument is not evidence. The defendant took no exception to the curative instructions.

We have scrutinized with care cases which involve intentional misstatements. *Commonwealth* v. *Francis,* 391 Mass. 369, 373 (1984). See *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 536-537 (1971), aff'd sub nom. *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 645 (1974). It is well within the discretion of the trial judge to deny a mistrial and rely on appropriate curative instructions to erase error even in a case of intentional misstatement. See *Donnelly* v. *DeChristoforo, supra* at 644; *Commonwealth* v. *Francis, supra* at 373-374. See also *Commonwealth* v. *DeChristoforo, supra* at 537. Cf.

---

[13] Although there is no finding on this point, the record suggests that the prosecutor unintentionally overlooked the document and argued to the jury assuming that it had been admitted.

*Commonwealth* v. *Bellino,* 320 Mass. 635, 642-645, cert. denied, 330 U.S. 832 (1947). Here, where the prosecutorial error appears unintentional and where curative (albeit general) instructions were given to which the defendant did not object, the judge was justified in denying a motion for mistrial.

iii. In final argument the prosecution noted that the rapes occurred on December 8, 1980, and stated that the defendant "didn't work one job until May of 1981." A stipulation read to the jury by defense counsel established that the defendant worked between May 3, 1981, and July 30, 1981, and stated, "[T]hat is all in 1981." The defendant argues that the prosecution misstated the facts.

It is clear that a prosecutor "has the right to argue inferences from the evidence favorable to his case, and the precise form should not control unless it tends to lead the jury to an improper inference not from the evidence but from the apparent personal knowledge of the attorney." *Commonwealth* v. *Francis, supra* at 372, quoting *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 315 (1973). Here the somewhat ambiguous stipulation gave the prosecution the latitude to infer that between January 1, 1981, and May 3, 1981, the defendant did not work: but nothing in the record supports the inference that he did not work in December, 1980. It is unclear what harm to the defendant results from this statement. The defendant argues that the remark implied "willful unemployment at the time of the incident and consequential motivation to commit the crimes alleged." It is hard to imagine how the fact of unemployment proves that one bears a guilty conscience, or demonstrates a desire or propensity to commit aggravated rape. Assuming that some harm resulted from this statement, there was no error since the judge gave proper curative instructions.

b. At trial defense counsel objected to the loss of a tape recording which contained a December 9, 1980, interview with Karen. The tape had been held by Detective Rufo who died shortly after receiving it. Detective Keough was unable to locate the tape or any transcript. We have repeatedly stressed the need for prosecutors and police to do their utmost to preserve and present "exculpatory evidence which is available to the

prosecution." *Commonwealth* v. *Redding,* 382 Mass. 154, 157 (1980). See *Brady* v. *Maryland,* 373 U.S. 83 (1963); *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 307-310 (1984). The loss of evidence presents special problems. See *United States* v. *Arra,* 630 F.2d 836, 848 (1st Cir. 1980). When potentially exculpatory evidence is lost or destroyed, the culpability of the government will be weighed along with the materiality of the evidence and the potential prejudice to the defendant. See *United States* v. *Bryant,* 439 F.2d 642, 653 (D.C. Cir. 1971). See also *United States* v. *Arra, supra* at 849.

In this case, there is no suggestion that the loss of the tape was intentional or due to bad faith. While the evidence may have been material, there is no demonstration of how it would have been exculpatory. Where as here, the defendant relies on mere conjecture and surmise, contradicted by evidence in the record, that lost evidence would have been exculpatory and where the evidence was lost not because of bad faith but under extraordinary circumstances which mitigate the culpability for the loss, there is no ground for reversal. Here the prejudice to the defendant was "too insubstantial and uncertain to warrant reversal." *Commonwealth* v. *Walker,* 14 Mass. App. Ct. 544, 549 (1982).

6. *Ineffective assistance of counsel.* In his pro se reply brief the defendant argues that he was denied the effective assistance of counsel without specific reliance on either State or Federal constitutional grounds. But we have held that if the behavior of counsel meets the test specified by Massachusetts law, then "the Federal test is necessarily met as well." *Commonwealth* v. *Howell,* 394 Mass. 654, 657 (1985), quoting *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985). *Commonwealth* v. *Florentino,* 396 Mass. 689, 690 n.1 (1986). See *Strickland* v. *Washington,* 466 U.S. 668, 687-696 (1984). Thus we need only consider the defendant's claim under Massachusetts law, leaving open, once again, any differences between the two standards. *Commonwealth* v. *Howell, supra* at 657. *Commonwealth* v. *Fuller, supra* at 256 n.3. *Commonwealth* v. *Florentino, supra.* We look to see if there has been "behavior of counsel falling measurably below that which might be expected

from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Howell, supra* at 657. There was no "serious incompetency, inefficiency, or inattention of counsel" in this case such that the *Saferian* test was not met.

First, the defendant argues trial counsel failed to make a timely motion to suppress identifications and represents that the motion was made after jeopardy attached, and four days into trial. That contention has no basis in the record since the motion to suppress was first filed by prior counsel on October 3, 1983, four months before the jury were sworn, and was then pursued as a substituted motion after the jury were sworn, but before testimony was taken.

Second, the defendant argues that trial counsel improperly agreed that the December 9, 1980, photographic identification procedure was proper. When defense counsel chose not to pursue a challenge to the photographic identification session, he had adequate knowledge of the circumstances of the identification procedure. It was well within his discretion to drop that issue, especially where, as here, there was every probability that further investigation would not have helped the defendant's case. Moreover, the circumstances of that identification were before the jury and defense counsel never waived the right to challenge the weight and reliability of that identification evidence at trial. The defendant does not argue that counsel failed adequately to treat these issues at trial: we cannot fault defense counsel for his reasonable judgment that there was no basis to pursue the *suppression* of that evidence. See *Commonwealth* v. *Drayton,* 386 Mass. 39, 42 (1982).

We have reviewed the other objections of the defendant not discussed in detail above and find them to be so insubstantial as not to require comment.

*Judgments affirmed.*