COMMONWEALTH vs. ROBERTO URENA.

Bristol. January 4, 1994. - May 6, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal*, Assistance of counsel. *Constitutional Law*, Assistance of counsel. *Jury and Jurors*.

This court concluded, after consideration of the Federal standard for effective assistance of counsel as addressed in *Lockhart* v. *Fretwell*, 113 S. Ct. 838 (1993), that satisfaction of the standard for effective assistance of counsel under the Declaration of Rights of the Massachusetts Constitution still necessarily satisfies the Federal standard. [695-696]

A criminal defendant was not deprived of his right to the effective assistance of counsel at trial, guaranteed by art. 12 of the Declaration of Rights of the Massachusetts Constitution, because his attorney did not object to the trial judge's allowing jurors to ask oral questions of witnesses testifying at trial, where defense counsel did not display any serious incompetency, inefficiency or inattention with respect to the issue [696-698]; nor did the defendant demonstrate any prejudice from the questioning of witnesses by the jurors or from the procedure used by the judge for such questioning [699-701].

This court stated that the questioning of witnesses by jurors should be limited to those rare cases where, in the opinion of the trial judge, it is particularly appropriate; and in addition the court set forth certain safeguards necessary to limit the risk of error or prejudice in those cases. [701-703]

INDICTMENT found and returned in the Superior Court Department on November 29, 1989.

The case was tried before *Chris Byron*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert L. Goodale*, Assistant District Attorney, for the Commonwealth.

*Frank G. Kelleher*, for the defendant, submitted a brief.

LIACOS, C.J. The defendant appeals from his conviction of unlawful distribution of cocaine. We transferred the case to this court on our own motion. The sole issue on appeal is whether the defendant was deprived of the effective assistance of counsel at his trial because his attorney did not object to the trial judge's practice of allowing jurors to ask oral questions of witnesses testifying at trial. We affirm.

The defendant was indicted for trafficking in cocaine in violation of G. L. c. 94C, § 32E (*b*) (2) (1992 ed.), and for unlawful distribution of cocaine in violation of G. L. c. 94C, § 32A (*c*) (1992 ed.). He was tried before a jury in the Superior Court in Bristol County. The jury returned a verdict of guilty on the indictment charging the defendant with unlawful distribution and returned a verdict of not guilty on the indictment charging him with trafficking. The judge sentenced the defendant to from eight to ten years at the Massachusetts Correctional Institution, at Cedar Junction.[1]

The facts underlying the indictments are not relevant to the issue on appeal. Therefore, we do not recite them. Instead, we discuss the events at trial on which the defendant bases his appeal.

After the direct, cross, redirect, recross, further redirect, and further recross examinations of the Commonwealth's first witness, New Bedford police Officer Michael O'Brien, the judge informed the assistant district attorney and the defense attorney, in a sidebar conference, that he intended to allow the jurors to ask questions of the witness. The judge informed both attorneys that he would "give [them] the option of how [he was] going to do it," and further explained that they either could stand at sidebar while questions were posed by the jurors and quietly make objections to the judge or could remain at their seats and make objections in the usual way. Defense counsel responded, "Okay." The assis-

---

[1]On the defendant's motion to revise or revoke sentence, the Appellate Division of the Superior Court amended the defendant's sentence to two and one-half years at a house of correction, one year to be served. By the time of its decision, the Appellate Division deemed the defendant to have served the required time and ordered the defendant discharged.

tant district attorney made a blanket objection to the judge's allowing the jurors to ask questions. The judge informed counsel that he was going to do it. When the judge inquired whether there were any objections to the procedure to be followed, the defendant's attorney said he had none.

The judge then addressed the jury:

> "Mr. Foreman and ladies and gentlemen of the jury, I'm going to permit you to ask questions of all the witnesses. If you have any questions, you may ask. Just raise your hand and I'll respond just like, let's say, you are in class. I'll call on you to ask the question. And you may not be able to ask it. I mean, you may not — I may say you can't ask it. It may be objectionable, in other words. When I ask a question, lawyers have a right to object. And I'm not offended if they object. Sometimes I may not be thinking of a rule of evidence and I've been known to sustain objections made to questions asked by me. So don't be embarrassed if someone objects to your question or if I on my own tell you that you can't ask it. And we know that you don't know the rules of evidence. It's bad enough even when the lawyers know the rules of evidence, so don't let that concern yourself."

In charging the jury before their deliberations commenced, the judge did not give any further instructions regarding testimony given in response to juror questioning.

Several jurors asked Officer O'Brien a number of questions. The defense attorney objected successfully to one of the questions, and also objected successfully to part of an answer given by the witness in response to a juror question. In addition, the trial judge disallowed a juror question on his own. Generally speaking, the testimony given by the witness in response to juror questions merely repeated or clarified the testimony already given by the witness. After the jurors questioned the witness, both attorneys were given the oppor-

tunity, and used that opportunity, to question the witness further.

The next witness to testify for the Commonwealth was New Bedford police Officer Laurent St. Jean. After both attorneys questioned St. Jean, the jury were given an opportunity to ask him questions. They had none.

The Commonwealth rested its case and then the defendant testified on his own behalf. After direct and cross-examinations of the defendant, the jurors were permitted to ask questions of him. The judge himself asked a few questions of the defendant. See *Commonwealth* v. *Paradise*, 405 Mass. 141, 157 (1989) (judge may ask questions in order to clarify an issue, to prevent perjury, or to develop trustworthy testimony). The defense attorney did not object to the questions posed by the jurors and the judge. The assistant district attorney, however, successfully objected to a few of the juror questions. As with Officer O'Brien's testimony, the testimony given by the defendant in response to juror questions repeated or clarified testimony that he had already given.

The defense rested and then the Commonwealth called a rebuttal witness, Sergeant Melvin A. Wotton. No juror questions were put to Wotton.

The defendant claims that his trial attorney's failure to object to the questioning of witnesses by the jurors constituted ineffective assistance of counsel and therefore violated his rights guaranteed by art. 12 of the Declaration of Rights of the Massachusetts Constitution and by the Sixth and Fourteenth Amendments to the United States Constitution. In *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985), we concluded that, if the standard for effective assistance of counsel under the Declaration of Rights is satisfied, the Federal standard is satisfied as well. Accord *Commonwealth* v. *Licata*, 412 Mass. 654, 661 n.10 (1992); *Commonwealth* v. *Charles*, 397 Mass. 1, 14 (1986). We arrived at this conclusion after consideration of the United States Supreme Court's then most recent pronouncement on the Sixth Amendment right to counsel, *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984). *Fuller, supra.* We have left open

the question what differences, if any, may exist between the two standards. *Charles*, *supra* at 14, and cases cited. *Fuller*, *supra*.

Since the time of our recent discussion in *Licata* regarding the standards for the right of effective assistance of counsel granted by the Declaration of Rights and the Federal Constitution, respectively, the United States Supreme Court again has addressed the requirements of the Federal standard. *Lockhart* v. *Fretwell*, 113 S. Ct. 838, 842-843 (1993). On consideration of *Lockhart*, we conclude that satisfaction of the standard for effective assistance of counsel under the Declaration of Rights still necessarily satisfies the Federal standard. We again leave open for discussion in an appropriate case the question posed in *Charles*, *supra*, and *Fuller*, *supra*, regarding the possible differences between the State and Federal standards. In light of the newly explicated Federal standard for the right of effective assistance of counsel, see *Lockhart*, *supra* at 848-850 (Stevens, J., dissenting), however, we emphasize that this court will be the arbiter of the standard for effective assistance of counsel under the Declaration of Rights and will not be bound by Federal precedent when deciding that issue.

We examine the defendant's claim of ineffective assistance of trial counsel under the Massachusetts standard, announced in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974): "[W]hat is required in the actual process of decisions of claims of ineffective assistance of counsel, and what our own decisions have sought to afford, is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."

The defendant argues that his trial counsel's failure to object generally to the judge's allowing jurors to question witnesses and specifically to the procedure used at trial for juror

questioning constituted ineffective assistance of counsel. He contends that, in general, there is a potential for prejudice to the defendant and to the integrity of the trial process when jurors are allowed to ask questions. He also contends that, in this case, there was actual prejudice to the defendant.

We first consider whether there was "serious incompetency, inefficiency, or inattention of counsel" in the trial attorney's failure to object to juror questioning in general or in his failure to object to the procedure used at trial for that questioning.

When the judge first informed both attorneys that he would allow jurors to ask questions of witnesses, the prosecutor objected generally to allowing jurors to ask questions. The judge overruled that objection and said that he was going to do it. Thus, the defense attorney may not have seen fit to make the same objection since it was clear that the judge was going to allow jurors to ask questions, and so the objection would serve no purpose other than to preserve the issue for appeal. As part of his trial strategy, defense counsel may have evaluated the likelihood of success on appeal and concluded that an objection merely for the purpose of preserving the issue for appeal was unwise. See *Commonwealth* v. *White*, 409 Mass. 266, 272-273 (1991).

In light of the decisions by the great majority of the courts of other States that, in general, juror questioning of witnesses is permissible in the sound discretion of the judge, we cannot say that the defense attorney displayed behavior falling measurably below that expected from an ordinary fallible lawyer when he failed to object to the allowance of juror questioning.[2] Furthermore, defense counsel at trial may have been of

[2]See, e.g., *State* v. *LeMaster*, 137 Ariz. 159, 163-164 (Ct. App. 1983) (written questioning); *Nelson* v. *State*, 257 Ark. 1, 4 (1974); *People* v. *McAlister*, 167 Cal. App. 3d 633, 643-645 (1985); *Yeager* v. *Greene*, 502 A.2d 980, 986 n.16 (D.C. 1985); *Scheel* v. *State*, 350 So. 2d 1120, 1121 (Fla. Dist. Ct. App. 1977) (direct questioning); *Cheeks* v. *State*, 266 Ind. 190, 195 (1977) (written questioning); *Rudolph* v. *Iowa Methodist Medical Ctr.*, 293 N.W.2d 550, 556 (Iowa 1980) (written questioning); *Slaughter* v. *Commonwealth*, 744 S.W.2d 407, 413 (Ky. 1987), cert. denied, 490 U.S. 1113 (1989); *People* v. *Heard*, 388 Mich. 182, 187-188 (1972) (writ-

the opinion that any prejudice which may be inherent in juror questioning would operate in his favor, not in favor of the Commonwealth.[3]

The defense attorney's failure to object to the procedure used at trial for juror questioning is a closer question. The judge specifically inquired whether there were objections to the procedure to be used. As we discuss below, it would have been preferable if, among other things, jurors first wrote their questions, which then were reviewed by the judge and both counsel before being put to the witness on the stand. The defense attorney, however, made no objection, but the prosecutor also made no objection.

Though we likely would answer in the negative, we need not decide whether the defense attorney's failure to object to the procedure used for juror questioning of witnesses constituted serious incompetency, inefficiency, or inattention of

ten or direct questioning); *Lucas* v. *State*, 381 So. 2d 140 (Miss. 1980); *Sparks* v. *Daniels*, 343 S.W.2d 661, 667 (Mo. Ct. App. 1961); *State* v. *Rodriguez*, 107 N.M. 611, 614 (Ct. App. 1988) (written questioning); *Sitrin Bros.* v. *Deluxe Lines, Inc.*, 35 Misc. 2d 1041, 1043 (N.Y. County Ct. 1962); *State* v. *Howard*, 320 N.C. 718, 726 (1987) (written questioning "better practice," but direct questioning allowed); *State* v. *Sheppard*, 100 Ohio App. 345, 390 (1955), aff'd, 165 Ohio St. 293, cert. denied, 352 U.S. 910 (1956); *Krause* v. *State*, 75 Okla. Crim. 381, 386 (1942); *Boggs* v. *Jewell Tea Co.*, 266 Pa. 428, 434 (1920); *State* v. *Barrett*, 278 S.C. 414, 418 (1982), cert. denied, 460 U.S. 1045 (1983) (written questioning "safer practice"); *Byrge* v. *State*, 575 S.W.2d 292, 294-295 (Tenn. Crim. App. 1978); *State* v. *Johnson*, 784 P.2d 1135, 1144-1145 (Utah 1989) (direct questioning).

Georgia, Nebraska, and Texas are the only State courts that have prohibited juror questioning of witnesses. See *State* v. *Williamson*, 247 Ga. 685, 686 (1981); *State* v. *Zima*, 237 Neb. 952, 956 (1991); *Morrison* v. *State*, 845 S.W.2d 882, 888-889 (Tex. Crim. App. 1992).

Federal courts generally have reached the same result. See, e.g., *United States* v. *Sutton*, 970 F.2d 1001, 1005 (1st Cir. 1992). Accord *United States* v. *Lewin*, 900 F.2d 145, 147 (8th Cir. 1990); *United States* v. *Polowichak*, 783 F.2d 410, 413 (4th Cir. 1986); *United States* v. *Callahan*, 588 F.2d 1078, 1086 (5th Cir.), cert. denied, 444 U.S. 826 (1979); *United States* v. *Witt*, 215 F.2d 580, 584 (2d Cir.), cert. denied sub nom. *Talanker* v. *United States*, 348 U.S. 887 (1954).

[3]The defendant assumes that any prejudice in juror questioning would have worked against him. It is at least equally likely that any prejudice in fact would have worked against the Commonwealth.

counsel. This is so because, on consideration of the second part of the *Saferian* standard — whether the attorney's behavior likely prejudiced the defendant by depriving him of an otherwise available, substantial ground of defense, we conclude that the defendant has shown no real prejudice resulting either from the allowance in general of the questioning of witnesses by the jurors or from the specific procedure used at his trial.

The defendant argues that, generally, permitting jurors to ask questions of witnesses may be prejudicial to a party at trial and interfere with the integrity of the trial process. We do not reproduce the defendant's entire argument on this issue here, but we recognize that the defendant repeats theoretical arguments against juror questioning advanced by other authorities. See, e.g., *United States* v. *Sutton*, 970 F.2d 1001, 1005 (1st Cir. 1992); Comment, Your Honor, May I Ask a Question?: The Inherent Dangers of Allowing Jurors to Question Witnesses, 7 Cooley L. Rev. 213, 217-221 (1990). Among the problems often cited are trial delay, premature deliberation by jurors, development of bias by jurors, reluctance of attorneys to object to juror questions because of the fear of offending jurors, satisfaction of the government's burden of proof beyond a reasonable doubt by means of juror-initiated evidence, assignment of disproportionate weight by jurors to evidence elicited in response to their own questions, and transformation of the adversary process into an inquisitorial process. *Id.*[4]

The fatal weakness in the defendant's argument is that he has not shown any actual prejudice. While there may be a theoretical potential for prejudice in allowing jurors to ask questions, "[w]e look at the question of assistance of counsel as a practical not an abstract matter." *Saferian, supra* at 98.

---

[4]The results of one study suggest that some of the problems associated, in theory, with jurors' questioning of witnesses actually do not arise in practice. Heuer, Increasing Jurors' Participation in Trials: A Field Experiment with Jury Notetaking and Question Asking, 12 Law & Hum. Behav. 231, 252-256 (1988).

Cf. *Lockhart, supra* at 842-843 n.2 (prejudice inquiry is done on case-by-case basis).[5]

The defendant argues that he was prejudiced in fact. He points to several of the questions asked by jurors to advance his argument. The defendant points to one instance where a juror asked a question phrased in such a way that it may be inferred that the particular juror already had reached a conclusion on an issue in the case. The defendant contends that this question, phrased in a conclusory manner, may have alerted other jurors that this juror had made up her mind and thereby influenced other jurors.[6] This argument is speculative; the defendant points to nothing in the record to support the assertion that other jurors were influenced improperly and prematurely by this juror's question.

Another set of questions that the defendant asserts to be prejudicial was posed to the defendant himself and involved the defendant's activities during a period of time that he alleged that he was locked out of his apartment. The defendant argues that these questions elicited evidence that the prosecutor failed to elicit in his case, and again that these questions prematurely and improperly may have influenced other jurors. Yet, as previously noted, the answers to these questions only repeated or clarified previous testimony. While the answers may have contributed to the Commonwealth's case in some way, we cannot say that they were used to satisfy the Commonwealth's burden of proof beyond a reasonable doubt.

---

[5] Indeed, there are asserted benefits to juror questioning of witnesses, such as the opportunity for jurors to more fully understand the evidence, indication to trial counsel during trial of the jurors' thought processes and perceived weaknesses in a case, enhanced attentiveness of jurors, and furtherance of the truth-seeking ideal.

[6] The witness testifying was Officer O'Brien. The juror asked him the following question: "Did the search warrant that was issued, was that because of the purchase that you had made just previous or could it have been issued otherwise for another reason?" The defendant's argument is that this juror had concluded that the defendant committed the crime charged, distribution of cocaine, because the juror referred to "the purchase that [O'Brien] had made." It is just as likely that the juror merely phrased the question in the language used by Officer O'Brien in describing the alleged drug sale.

As for the influence the questions may have had on the other jurors, that influence is only speculative.

We comment briefly on the defendant's assertion that the prejudicial effect on other jurors of the specific juror questions discussed here deprived the defendant of an otherwise available, substantial ground of defense. The substance of this argument is that, since the jurors were prejudiced against the defendant on hearing certain questions posed by other jurors, any defense he may have presented would have been rendered ineffective. Our response to this assertion is that the defendant misinterprets the *Saferian* standard. A general assertion that the defendant was deprived of a possible defense will not suffice: the defendant must show he was deprived of an actual, not hypothetical, otherwise available, substantial ground of defense as a result of his attorney's conduct.

We are not convinced that the defendant's trial attorney engaged in behavior falling measurably below that which might be expected from an ordinary fallible attorney. As importantly, we conclude that the defendant has not shown that he was deprived of an actually available, substantial ground of defense. The defendant has not demonstrated that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Accordingly, we affirm the defendant's conviction.

A few further comments may be helpful to trial judges and trial advocates.[7] We observe that the practice of allowing jurors to question witnesses has the potential for introducing prejudice, delay, and error into the trial, and should be utilized infrequently and with great caution. See note 2, *supra*. While we do not decide today that allowing jurors to question witnesses is impermissible, we believe that the question-

---

[7] We have concluded that the questions put to the defendant by the jurors and the defendant's answers to those questions were not prejudicial to the defendant. We note that the questioning of a defendant in a criminal case by jurors may be "particularly troublesome." *United States* v. *Sutton*, 970 F.2d 1001, 1006 n.6 (1st Cir. 1992). See *United States* v. *Nivica*, 887 F.2d 1110, 1123 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990).

ing of witnesses by jurors should be limited to cases where, in the opinion of the trial judge, it is particularly appropriate. Even in those rare cases where jurors are permitted to question witnesses, certain safeguards are necessary to limit the risk of error or prejudice.

When a judge decides that it would be appropriate to allow jurors to ask questions of witnesses, the judge must inform the parties and give them an opportunity to be heard in opposition to the practice or to suggest the procedure to be followed. Before jurors are permitted to ask questions, the judge should instruct them, as did the judge in this case, that they will be given the opportunity to pose questions to witnesses. The judge should tell the jury that their questions should be limited to important matters. It must be emphasized to jurors that, although they are not expected to understand the technical rules of evidence, their questions must comply with those rules, and so the judge may have to alter or to refuse a particular question. The judge further should emphasize that, if a particular question is altered or refused, the juror who poses the question must not be offended or hold that against either party. Finally, it is important that the jurors are told that they should not give the answers to their own questions a disproportionate weight. These instructions should be repeated during the final charge to the jury before they begin deliberations. See *United States* v. *Sutton, supra* at 1005; *United States* v. *Nivica*, 887 F.2d 1110, 1123 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990).

Further, we do not believe that it is appropriate for jurors to ask oral questions and then require attorneys to object to those questions. Such a procedure may chill the willingness of attorneys to object to particular questions, and may result in a juror's being embarrassed or offended by an objection. Thus, a juror with a question should write it down and pass it to the judge. The judge and the attorneys then should discuss the questions outside the hearing of the jury and at that time any objections should be made and ruled on. It may be necessary to remind jurors that particular questions may have been altered or discarded because of the rules of evi-

dence. To avoid unnecessary delay, the trial judge might have all jurors submit their questions at one time, after a witness has been examined but before that witness steps down from the stand. The parties should be given the opportunity for further examination of a witness after juror questions have been answered. Cf. *United States* v. *Sutton, supra* at 1005-1006.

The defendant was not deprived of the effective assistance of counsel at his trial. Accordingly, the judgment of the Superior Court is affirmed.

*So ordered.*