## Commonwealth *vs.* Harvey Durango.

No. 98-P-925.

Worcester. April 7, 1999. - June 24, 1999.

Present: Brown, Perretta, & Jacobs, JJ.

*Practice, Criminal,* Argument by prosecutor. *Evidence,* Argument by prosecu-
tor, Alias, National origin, Consciousness of guilt.

The record of a criminal trial did not support the defendant's claim that the
prosecutor had attempted to sway the jury by focusing their attention on
the defendant's national origin. [187-188]

At a criminal trial, the improper admission in evidence of the defendant's use
of an alias did not, in the circumstances, constitute prejudicial error requir-
ing reversal. [188-189]

At a criminal trial, testimony by a police officer that the photo on the
defendant's alien registration card appeared to have been altered was
unlikely to have influenced the jury, and it was unlikely that the jury drew
any improper negative inference from evidence that the defendant and his
longtime companion were not married. [189-190]

INDICTMENT found and returned in the Superior Court Depart-
ment on June 10, 1996.

The case was tried before *Martha B. Sosman,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services,
for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the
Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court
jury of trafficking in heroin in an amount of more than 200
grams, G. L. c. 94C, § 32E, and failure to stop a motor vehicle
for a police officer, G. L. c. 90, § 25.[1] On appeal, the defendant
alleges that the trial judge erred in admitting prejudicial
evidence relating to the defendant's nationality, his prior use of
an alias, his use of what was alleged to be an altered alien

---

[1]The latter conviction was placed on file, the defendant not objecting.

identification card, and his marital status, none of which was relevant to the crimes with which he was charged. We affirm.

Based on the evidence presented at trial, the jury could have found the following facts: On the evening of March 19, 1996, State Trooper Michael Butler was on routine patrol in a marked State police cruiser on I-84 near the intersection with the Massachusetts Turnpike. At approximately 10:00 P.M., he observed a car going eastward on I-84 toward the Sturbridge entrance to the turnpike; its license plate area was not illuminated. Unable to ascertain whether the car had a license plate, Butler activated his lights and siren and gave pursuit.[2]

Although Butler was directly behind the car, it did not stop. It did, however, slow down. When the car reached the toll booth, it passed through a closed toll lane without stopping. At that point, Butler was able to pull in front of the car, forcing the driver to stop.

Butler approached the car and ordered the driver, the sole occupant, to produce identification. In response, the driver — later identified as the defendant — handed Butler a Massachusetts license as well as some other identity cards, including an alien registration card. Using the radio in his cruiser, Butler attempted to confirm that the license was valid and, at the same time, checked to see if the defendant had any outstanding warrants.

While awaiting a response, Butler received a communication from a supervisor at the toll station indicating that one of the toll collectors had seen the defendant toss something onto the side of the road as the defendant drove through the toll lane. Based on that information, Butler summoned assistance and continued to detain the defendant. A subsequent search of the roadside in the area indicated by the toll taker yielded a plastic bag containing heroin with a street value of approximately $400,000.

The defendant was placed under arrest. A search of the defendant's car by a specially trained drug-sniffing dog yielded

---

[2]No argument has been made within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), as to whether the officer's purported response to the alleged defective license plate light on the defendant's vehicle may be attributed to the improper law enforcement practice of using a pretext or other disingenuous reason to stop certain predetermined drivers for the so-called offense of "driving while Hispanic," or, in the vernacular, "DWH." See Commonwealth v. Gonsalves, 429 Mass. 658, 663-664 (1999). See also Webb, DWB*, Esquire, April 1999, at 119.

positive results for traces of drugs on a cassette box found on the floor of the front of the passenger compartment. Other relevant evidence is included in our analysis as necessary.

The gist of the defendant's argument is that the trial judge permitted the prosecutor to introduce several pieces of evidence, none of which was relevant to the charges at issue in the defendant's trial, but all of which held the potential to prejudice the jury against him. The defendant argues that the aggregate impact of this improper evidence was to deprive the defendant of a fair trial in which guilt was assessed solely upon objective consideration of the Commonwealth's proof. We consider each piece of disputed evidence in turn.

Far and away the most serious argument advanced by the defendant is that the prosecutor attempted to sway the jury through evidence of the defendant's national origin. The defendant apparently is from Colombia, and he argues that, by stressing this fact, the prosecutor sought to portray the defendant as a member of one of that country's drug cartels — criminal syndicates that figure frequently in news reports to which the jury likely had been exposed. Had the prosecutor, in fact, aggressively urged such an inference, reversal almost certainly would be required. To obtain a conviction based on ethnic biases is grossly improper. However, even a cursory reading of the record suggests that nothing of the sort occurred here.

The sole reference to the defendant's national origin occurred — if at all — during cross-examination of a defense witness. The prosecutor asked the witness where she was from, and the witness replied, "Colombia." Later, the prosecutor asked the same witness how she knew the defendant. The witness stated that she had known the defendant her whole life (the record is somewhat garbled at this point; however, for the sake of argument, we shall assume that the witness stated that she had known the defendant her whole life). She did not, however, specifically indicate that the defendant also was Colombian. Further, she did not state when either she or the defendant had arrived in the United States. The prosecutor never made any further mention of the national origin of either the witness or the defendant.

Without question, a prosecutor may not attempt to sway a jury's verdict by focusing their attention on extraneous matters. See and compare *Commonwealth* v. *Santiago*, 425 Mass. 491, 501-502 (1997). See also *Commonwealth* v. *Bibby*, 35 Mass.

App. Ct. 938, 941 (1993) (error for prosecutor to argue that defendant's offense was not a "victimless crime"). Compare *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817 (1973) (admission of pictures not error because they had a "distinct purpose" at trial). A jury is expected to render a verdict upon careful consideration of the evidence presented at trial. When the jurors' emotions are excited, or their attention diverted to extraneous matters, the potential is created for them to depart from this narrow task.

On the basis of these principles, we deemed it reversible error for the prosecutor in *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 717-720 (1989), to appeal in his closing, among other things, "to the deep public anxiety about the [nation's] drug problem" and to refer to Colombian drug cartels in particular. *Id.* at 717-718. The remarks at issue here, however, were of an entirely different character. The reference to Colombia was isolated and was never linked directly to the defendant or to illegal drug sales. This makes for a significant contrast with the facts of *Gallego.*

We note that the disputed reference here was significantly more benign than the expert evidence challenged in *Commonwealth* v. *Munera*, 31 Mass. App. Ct. 380, 388 (1991), in which the prosecutor referred to the distinctive practices of Colombian drug dealers. There, in denying the defendant relief, we reasoned that the testimony in no way was used to suggest that the defendant was guilty merely by virtue of his ethnic background. If *Munera* establishes a line for proper argument in this context, the prosecutor here was well within permissible limits.

Next, the defendant asserts that the prosecutor made improper use of the fact that the defendant had previously used an alias. After the defendant's arrest, police sent the FBI a copy of his fingerprints. The FBI reported that, according to its record, the fingerprints belonged to one Carlos I. Bueno. At trial, the prosecutor questioned the defendant about his use of an alias, ostensibly for the purpose of suggesting that the name he had given Trooper Butler at the time of his arrest, Harvey Durango — the name that appeared on his alien registration card and his driver's license — was an alias. The giving of a false name to police has been deemed probative of a defendant's consciousness of guilt. See *Commonwealth* v. *Mack*, 423 Mass. 288, 291 (1996). The defendant admitted that he had used the name Car-

los I. Bueno in the past to obtain employment but asserted that his real name was Durango, the name he gave the police officer.

On appeal, the defendant claims that the defendant's prior use of an alias (assuming that Durango is, in fact, his real name) had no relation to the present case and was introduced by the prosecutor merely to suggest to the jury that the defendant had been involved in other criminal acts. Even where — as here — the prior use of an alias is proved, generally such evidence should not be admitted where it appears unrelated to the crime charged. See *Commonwealth* v. *Fetzer*, 19 Mass. App. Ct. 1024 (1985). See also *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 6-7 (1986). Here, there was no evidence that the defendant had sought any strategic advantage through the use of an alias in the context of the offense for which he was being tried, or that an alias was in any way used to further his drug trafficking activities. The evidence should have been excluded.

However, the admission of the evidence did not constitute prejudicial error requiring reversal. The Commonwealth's case was overwhelmingly strong, supported as it was by the eyewitness testimony of the toll collector, whose testimony in turn was corroborated by the discovery of the drugs by the roadside. Moreover, the defendant was given a full opportunity to explain his prior use of a different name, an explanation which, in the circumstances, was both plausible and relatively benign. We think that the jury's verdict was not affected by the evidence of the defendant's past use of an alias. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994) ("An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . .' "); *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 119 S. Ct. 523 (1998).

Finally, the defendant also objects to two further pieces of evidence: testimony by Butler that the defendant's alien registration card appeared to have been altered, and evidence that the defendant and his longtime companion were not married. Neither requires much discussion. Although Butler — as the defendant demonstrated during cross-examination — had relatively little experience with materials issued by the United States Immigration and Naturalization Service, the trooper nonetheless was entitled to state that he had questioned the defendant's documents initially because the photo on the alien registration card appeared to have been altered. The Com-

monwealth presented no further evidence on this point, and the issue was not likely to capture the jury's attention.

As to the defendant's marital status, we think it unlikely that the jury drew any improper negative inference from the fact that the defendant was unmarried. In any event, the prosecutor pursued the matter only because a defense witness at one point referred to the defendant's "wife," while the defendant had indicated that he was single on the booking form. This was appropriate grist for potential impeachment and, once the defendant clarified the point, no more was made of the issue.

*Judgment affirmed.*