## Commonwealth *vs.* Tony Martin
### (and three companion cases[1]).

No. 01-P-1482.

Suffolk. December 4, 2002. - January 31, 2003.

Present: Lenk, Grasso, & Doerfer, JJ.

Further appellate review granted, 439 Mass. 1103 (2003).

*Controlled Substances. Evidence,* Alias.

At a criminal trial in which the Commonwealth sought to prove that two defendants were engaged in a joint venture to distribute cocaine, the Commonwealth's repeated and improper use of evidence of one defendant's alias, which was not relevant to any live issue in the case, to impeach the defendant's character and thereby his credibility created a substantial risk of a miscarriage of justice and warranted reversal of his convictions [275-276]; further, where the defense of the second defendant relied primarily on the first defendant's testimony, the improper use of the alias to impeach the first defendant's credibility also infected the second defendant's convictions and required their reversal [276-277].

Indictments found and returned in the Superior Court Department on June 3, 1999.

The cases were tried before *Hiller B. Zobel,* J.

*Eric W. Ruben* for Rudy Strickland.

*Jane E. Ross* for Tony Martin.

*Stacy J. Silveira,* Assistant District Attorney, for the Commonwealth.

Lenk, J. After trial by jury, the defendants, Tony Martin and Rudy Strickland, were each convicted of unlawful distribution of cocaine in violation of G. L. c. 94C, § 32A, and distribution of cocaine within 1,000 feet of a school in violation of G. L. c. 94C, § 31J. The defendants appeal their convictions, with Martin asserting that the admission in evidence of his prior use of an alias constituted reversible error. Since we hold that

---

[1] Two against Rudy Strickland and one against Tony Martin.

the use of Martin's alias at trial warrants reversal of both defendants' convictions, we do not address the issues that Strickland raises.[2]

*The evidence.* At trial, the Commonwealth presented the following evidence. On March 16, 1999, at approximately 9:15 P.M., members of the Boston police department's drug control unit set up surveillance for drug activity near the intersection of Tremont and Stuart Streets in Boston. Detective James Fong was stationed on the third floor of a building on Stuart Street and used binoculars and a spotting scope to view activity on the street. Two other officers conducted surveillance in an unmarked police car stationed in a parking lot on Stuart Street across from a restaurant called the California Pizza Kitchen.

At approximately 9:45 P.M., Fong observed the defendants walking up and down Stuart Street. Fong recognized Martin, whom he had seen in the area on previous occasions. The defendants eventually stopped in front of the California Pizza Kitchen. Soon thereafter, a male, Corey Colcord, approached the defendants and began speaking with Martin. During the conversation, Strickland was standing approximately six to eight feet away from Martin and Colcord. After approximately a minute, Martin summoned Strickland with a hand motion. As Strickland approached, Fong observed Colcord handing over cash to Martin. He then observed Strickland spit an item from his mouth into Colcord's hands. Colcord then placed the item in the right front pocket of his pants. Sergeant Detective William Dwan, stationed across the street from the California Pizza Kitchen and viewing the scene with binoculars, testified as to similar observations.

Colcord then walked to a convenience store at the corner of Tremont and Stuart Streets, where he was apprehended by three officers. At this time, Colcord told the officers: "I got two in my pocket," then reached into his right front pocket and removed two plastic bags containing a substance later determined to be crack cocaine.

[2]Strickland asserts that the trial judge erred in (1) allowing the Commonwealth's peremptory challenge of a minority juror and (2) precluding Strickland from introducing certain exculpatory evidence. The former issue is unlikely to arise at any new trial, and were we to address the latter issue, which might arise upon retrial, we would conclude that it lacks merit.

The defendants were arrested shortly thereafter in front of the convenience store. Before the arrest, one of the officers observed Strickland make "a gulping motion like he was swallowing something." The officers found $158 in cash and a pager on Martin, and three dollars on Strickland.

Martin was the only defense witness. He testified that Colcord, with whom he was familiar, walked up to him and Strickland and showed Martin two packages of a white substance he had purchased earlier from someone else down the street. Colcord believed that the packages may have contained a substance that was not cocaine and lamented this possibility to Martin.

*Martin's alias.* Martin's trial counsel filed a motion in limine to exclude mention at trial of the fact that the police had prior acquaintance with both defendants and that they knew Martin by other names, viz., "the Hammer" and "Larry Palmer." The judge denied this motion, but agreed that reference to "the Hammer" should not be made. The trial judge explained, "You know somebody who had known the actor Tony Curtis from a long time ago might say, I know that guy, that's Bernie Schwartz, which is Tony Curtis' real name. That wouldn't suggest that Tony Curtis was doing anything illegal."

In his opening remarks to the venire, the judge twice mentioned the defendant's alias and, after the jury was empaneled, the clerk read the two indictments to them. In each indictment, the defendant was named as "Tony Martin, otherwise known as Larry Palmer." Thereafter, during the trial, the prosecutor and the Commonwealth's witnesses referred repeatedly to the name Larry Palmer. During his opening statement, the prosecutor told the jury that the police officers who witnessed the alleged transaction knew the defendant as both Tony Martin and Larry Palmer. At two other points in the opening, the prosecutor referred to the defendant as "Mr. Martin or Mr. Palmer." During the direct examination of the officers, there were three references made to "Mr. Palmer" or "Larry Palmer." The prosecutor cross-examined the defendant about this alias and the defendant testified that he had used the name Larry Palmer at one time, ten or fifteen years earlier. In his closing, the prosecutor twice referred to "Mr. Martin or Mr. Palmer's testimony." The prosecutor also stated the following:

"The last thing I want to do is ask you to think about Mr. Palmer or Mr. Martin's testimony. Think about the credibility of it. Think about who has the motive to make stuff up in this case. Look at his credibility. First off, the guy's got two names. How can you trust somebody who has two names at the outset? Think about that for a minute, before you even think about what he said."

Martin's trial counsel did not object to any of these references.

*Discussion.* When, as here, a motion in limine has been denied and counsel does not object as the subject evidence is being introduced at trial, we review on appeal whether the claimed error results in a substantial risk of a miscarriage of justice. *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998). *Commonwealth* v. *Hardy*, 47 Mass. App. Ct. 679, 681 (1999).

While admissible if relevant and of more probative than prejudicial value, "[a]liases can be suggestive of bad character and prior criminality, and therefore raise a possibility that the jury will improperly consider criminal propensity." *Commonwealth* v. *Carter*, 423 Mass. 506, 514 (1996). See *Commonwealth* v. *Sheline*, 391 Mass. 279, 286 (1984). Even if we were to assume without deciding that the Palmer alias had some relevance to the jury selection process, we discern no relevance whatever of the alias to the crimes charged here. See *Commonwealth* v. *Durango*, 47 Mass. App. Ct. 185, 189 (1999). This is not a case where the alias was relevant to establish the defendant's identity, since Martin did not dispute that he was the individual the officers observed meeting with Colcord and Strickland on the night of March 16, 1999. Contrast *Commonwealth* v. *Manning*, 44 Mass. App. Ct. 695, 705 (1998). The evidence should have been excluded.

The question, then, is whether the repeated improper use of the alias resulted in a substantial risk of a miscarriage of justice. We think that it did. If the many irrelevant references to the alias during the examination of witnesses were not enough, the coup de grace occurred when the prosecutor remarked in his closing argument, "How can you trust somebody who has two names at the outset?" The remark revealed the Commonwealth's impermissible purpose for using the alias: to impeach the defendant's character and thereby his credibility. No drugs were

found on either defendant, and the case essentially boiled down to a credibility match between the testifying officers and Martin. That drugs were found on Colcord was consistent with both the Commonwealth's and Martin's versions of the events. That Martin was found with $158 in cash and a pager did not strengthen the Commonwealth's case sufficiently to overcome the prejudicial aura cast by the Commonwealth's repeated and apparently calculated use of the irrelevant alias to undermine Martin's credibility.

This case is unlike both *Commonwealth* v. *Carter*, 423 Mass. at 514-515, and *Commonwealth* v. *Durango*, 47 Mass. App. Ct. at 189, where improper use of the defendant's alias did not create, respectively, either a substantial risk of a miscarriage of justice or reversible error. In *Carter*, *supra*, unlike here, curative instructions were given and reference to the alias, "Kilo," while generally suggestive of unspecified prior misconduct, was merely cumulative of other properly admitted evidence of prior bad acts. In *Durango*, *supra*, the evidence was not, as here, limited to the word of the police against the word of the defendant, but was "overwhelmingly strong," with police testimony buttressed by eyewitness third party testimony that was in turn corroborated by physical evidence. Indeed, in *Commonwealth* v. *Manning*, 44 Mass. App. Ct. at 705, where the alias was plainly relevant to the identification of the defendant as shooter, a critical issue, and thus more probative than prejudicial, we observed that the judge nonetheless instructed the jury twice that the properly admitted evidence was offered for the limited purpose of identification and "specifically forbade the jury from making any judgments in regard to the defendant's character based on the evidence." *Id.* at 706. No such steps were taken here, and in the circumstances, we conclude that the improper use of the alias created a substantial risk of a miscarriage of justice.

The remaining issue is whether Strickland's convictions must also be set aside. Strickland's defense relied primarily on Martin's testimony that Colcord had bought the drugs before meeting with the defendants. Strickland did not testify, and his defense was tied into and reliant upon Martin's credibility. The improper use of Martin's alias to impeach his credibility of

necessity also infected Strickland's convictions. The Commonwealth sought to prove that the defendants were engaged in a joint venture to sell cocaine, and thus, the ability of the jury to separate the convictions of Strickland and Martin is all the more doubtful.[3] Cf. *Commonwealth* v. *Berth*, 385 Mass. 784, 789 (1982) (where instruction on defendant's alibi defense on drug charges was erroneous, reversal was also required on convictions of codefendant allegedly involved in same drug transaction who did not raise alibi, since identification of codefendant could have been called into question had jury believed alibi). Accord *Commonwealth* v. *Franklin*, 366 Mass. 284, 289 (1974).

*Judgments reversed.*

---

[3]We recognize that the Commonwealth prosecuted Strickland as the principal for the distribution of cocaine and Martin as a joint venturer. As such, the judge instructed the jury that "it's not possible for you to have a guilty verdict against Mr. Martin unless you first conclude that Mr. Strickland has been proved beyond a reasonable doubt to have committed the distribution." However, these instructions do not shield Strickland from the prejudice that Martin sustained. The distinction between Strickland as the principal and Martin as the joint venturer does not change the fact that the jury effectively had to decide whether the two defendants, acting in tandem, sold Colcord the cocaine later found on him.