## Commonwealth *vs.* Terry Reeder.

No. 07-P-1919.

Suffolk. December 12, 2008. - February 26, 2009.

Present: Lenk, Meade, & Fecteau, JJ.

*Evidence,* Alias, Relevancy and materiality, Certificate of drug analysis, Business record. *Practice, Criminal,* Jury and jurors, Confrontation of witnesses. *Jury and Jurors. Constitutional Law,* Confrontation of witnesses.

At the trial of indictments charging controlled substances violations, no prejudicial error arose from repeated references to the defendant's alias, where the prosecution did not exploit the references, use the alias to refer to the defendant during trial, or discuss in closing argument the defendant's use of an alias. [752-754]

At a criminal trial, the judge erred in permitting an officer involved in the investigation to testify, in response to juror questions, that he had previously met the defendant at the house of correction, where, given that the defendant's identification was not a contested issue at trial, the probative value of this evidence did not substantially outweigh its potential prejudicial effect (i.e., the suggestion that the defendant had been previously incarcerated); nevertheless, the error did not significantly prejudice the defendant, in light of the overwhelming evidence against him at trial. [754-756]

Discussion of the difficulties arising when questions are solicited from jurors during the examination of witnesses at a criminal trial. [756-757]

At the trial of indictments charging controlled substances violations, there was no error in the admission in evidence of a drug laboratory's certificates of analysis. [757]

Indictments found and returned in the Superior Court Department on April 8, 2004.

The cases were tried before *Raymond J. Brassard,* J.

*Chauncey B. Wood* for the defendant.

*Jonathan J. Wellemeyer (David D. McGowan,* Assistant District Attorney, with him) for the Commonwealth.

Fecteau, J. The defendant appeals from convictions of distribution of heroin (three counts) and distribution of heroin in a school zone (three counts) following a jury trial in the Superior Court. He raises three issues on appeal: that the judge erred in

admitting evidence of an alias; that the judge erred in permitting an officer to testify that he had previously met the defendant at the house of correction; and that admitting a drug laboratory's certificates of analysis violated his right, pursuant to the Sixth Amendment to the United States Constitution, to confront witnesses. We affirm.

*Background.* In January and February, 2004, Detective Billie Jean Kanavich of the Boston University police department drug control unit was a part of an undercover drug operation at 850 Harrison Avenue in Boston. She posed as a person seeking drugs and conducted four transactions with the defendant while two other officers, including Boston University police Officer William Donnellan, conducted surveillance.

All four transactions began in a similar manner with Detective Kanavich standing either in the plaza at 850 Harrison Avenue (on January 22 and February 2, 2004) or in the lobbies of 850 (February 18, 2004) or 840 Harrison Avenue (February 19, 2004), attempting to make contact with drug dealers and engaging with a tall black male, whom she identified in court as the defendant, Terry Reeder. On each occasion, learning that she wanted heroin, the defendant indicated that he knew someone in the area who sold heroin and asked her how much she wanted. On three occasions, Detective Kanavich responded that she wanted a twenty-dollar bag (she asked for two twenty-dollar bags on February 2), and the defendant told her to walk with him along Massachusetts Avenue toward Shawmut Avenue. On the first two occasions, they stopped in front of a convenience store on the corner of Massachusetts Avenue and Shawmut Avenue, and on the latter two, they stopped at 616 Massachusetts Avenue. The defendant would then ask Detective Kanavich for the money. On two occasions, January 22, and February 18, she saw the defendant meet with a woman and make an exchange.[1] On February 2, 2004, Detective Kanavich did not see the woman; when she gave Reeder the money, he left her field of vision and later returned with two packets of folded lottery paper. On February 18, the defendant walked up Massachusetts Avenue toward Shawmut,

---

[1] On the first date, Detective Kanavich saw the woman reach into her pocket, remove a folded piece of lottery paper, and hand it to Reeder in exchange for the twenty dollars.

and was out of sight for a time; he returned with a woman and Detective Kanavich saw "hand to hand movements between the two of them."

On each of the four occasions, Reeder then returned and handed the folded lottery paper (twice in a napkin) to Detective Kanavich, who then left the area and met with her surveillance team, which included Officer Donnellan. After the first transaction on January 22, Officer Donnellan told Detective Kanavich that he recognized the black male subject as Terry Reeder, whom he had met during the officer's prior employment as a deputy sheriff at the Suffolk County house of correction, and that he knew him both by name and by sight.[2]

After each transaction, Detective Kanavich then returned to the station, opened the lottery paper, and noted that it contained a light brown powdery substance which she bagged and placed in an evidence locker. This evidence was later transmitted to the laboratory and certified as heroin.

*Discussion.* 1. *Alias.* The defendant contends that repeated reference to his alias constituted prejudicial error. We disagree. The name of the defendant, as originally listed on the indictments, was Terrence Young. Prior to trial, the defendant filed a motion to "correct" the indictments to reflect the defendant's "true name" of Terry Reeder, and for an order that the Commonwealth not refer to the defendant as Terrence Young or any other alias. The judge allowed the motion without objection from the Commonwealth. When discussing the first two drug transactions, Detective Kanavich twice referred to the defendant as "Mr. Young" without objection. The Commonwealth also introduced, without objection, the certificates of drug analysis referring to the defendant as Terrence Young. Following the detective's testimony, a few members of the jury asked the court to clarify the identity of Terrence Young.[3] The judge told the jury that any reference to Terrence Young referred to the defendant.

---

[2]The detail of his prior employment came only after a juror question. See discussion in section two, *infra.* Officer Donnellan also testified that he had seen Reeder three days before the encounter on January 22, 2004; they had run into one another in the Boston University Medical Center and exchanged greetings.

[3]As will be discussed in the next section, the judge permitted jurors to submit written questions that they proposed be asked of witnesses.

He also cautioned them not to speculate, talk about, or draw any conclusions about why that is so.[4]

"Aliases can be suggestive of bad character and prior criminality, and therefore raise a possibility that the jury will improperly consider criminal propensity." *Commonwealth* v. *Martin*, 442 Mass. 1002, 1002 (2004), quoting from *Commonwealth* v. *Carter*, 423 Mass. 506, 514 (1996). See *Commonwealth* v. *Sheline*, 391 Mass. 279, 286 (1984). In *Martin*, *supra*, the court reversed the defendant's conviction because "repeated references to [the defendant's] prior use of an alias before and during the Commonwealth's case-in-chief (compounded by further references in the Commonwealth's rebuttal case and closing argument) constituted a gratuitous, improper, and prejudicial attack on the defendant's character and credibility" without him having "put his character or reputation, or his use of an alias, at issue." *Id.* at 1003.[5]

Here, the prosecution did not exploit Detective Kanavich's references to the defendant as Young, nor the name on the drug certificates; the prosecutor never referred to the defendant other than as "Mr. Reeder" or "the defendant," nor did she refer to the defendant's use of another name in her closing statement. This case is unlike *Commonwealth* v. *Carter*, *supra* at 515, where the defendant was charged with murder: the court found that the Commonwealth and its witnesses' "continuous" use of "Kilo," a street name alias referring to the defendant, did not create a substantial risk of a miscarriage of justice even without a cautionary instruction, due to the "ample other and more direct evidence of the defendant's familiarity with drugs." Compare *Commonwealth* v. *Durango*, 47 Mass. App. Ct. 185, 189 (1999) (finding no prejudicial error, considering the overwhelming strength of the Commonwealth's case, despite there being no evidence relevant to whether "the defendant had sought any strategic advantage through

---

[4]At the sidebar conference following the receipt of this juror question, and before giving the instruction, the prosecutor suggested the likelihood that the defendant gave the name of Terrence Young at booking.

[5]While the prosecution had referred at a sidebar conference to the defendant's use of Young during booking procedure, the judge indicated that he would not allow that door to be opened with the jury, believing it overly prejudicial. But see *Commonwealth* v. *Walters*, 12 Mass. App. Ct. 389, 396 (1981) (use of a name other than his true name may be admissible as consciousness of guilt). The Commonwealth did not press the issue.

the use of an alias in the context of the offense for which he was being tried, or that an alias was in any way used to further his drug trafficking activities"). We determine that there was no prejudicial error here.

2. *Prior employment of officer.* The defendant next contends that the judge committed prejudicial error when he allowed Officer Donnellan to testify that he and the defendant had met at the house of correction.[6] After the officer had testified that he had met the defendant during his previous employment, two jurors asked where the officer had been previously employed. The judge allowed the question.[7] After the officer answered, the judge cautioned the jury not to draw any adverse conclusions about that fact, saying that there are many people who pass through the house of correction, including, among others, visitors and people awaiting trial who are later acquitted.[8] While the officer's testimony about his prior employment did not directly indicate

[6]At a hearing, in limine, of the Commonwealth's motion to allow reference to a prior relationship, but not the particulars of the prior interactions of the officer and defendant, the judge ordered the prosecutor to "instruct all of your witnesses that there is to be no mention of Mr. Reeder being at South Bay or Officer Donnellan encountering him at South Bay or at any Suffolk County institution, or facility. And indeed, he is not even to mention what his prior employment was, except on express direction from me."

[7]The judge's report to counsel of this question produced the following exchange: "I don't see a good way to avoid the truth on that. I think the Commonwealth is entitled to answer that question where it's been; it's a perfectly fair question. I think to ignore it is to ignore reality, to blink reality, and to put the witness in an uncomfortable position, i.e., not looking credible when he is credible on this issue. . . . I don't know how else to handle it, folks." Defense counsel objected and said: "Don't ask it." The judge continued: "Well, that's unfair to the jury. . . . That would be unfair to the jury; it's unfair to the legal system. A person's prior bad conduct, even specific conditions of crime, in even closely related matters may be admitted if it's relevant for some other purpose such as identity or modus operandi. . . . It's simply unfair to the legal system to prevent the witness from testifying, credibly, that he had a prior occasion in the real world to know the defendant and I don't see a way to avoid that." The defense counsel responded: "We are not arguing that he didn't." To which the judge replied: "No, but a juror has asked the question. And a reasonable thinking person would want to know the answer to that question." He then overruled the objection and said that he would give an instruction.

[8]The judge repeated these cautions in his final instructions: "[T]here was evidence from one of the witnesses of knowing or encountering the defendant at the Suffolk County House of Correction. I explained to you earlier that there are many circumstances in which any such meeting might take place. Some of them rooted entirely in innocent behavior. In all events, ladies and

that the defendant had been incarcerated, the defendant was vulnerable to an adverse inference, especially considering the circumstance of a trial that involved allegations of his involvement in multiple criminal acts.

"Although references to prior incarcerations obviously suggest that a defendant has been previously convicted of other crimes, such references are admissible if otherwise relevant, unless their probative value is substantially outweighed by their potential prejudicial effect. See, e.g., *Commonwealth* v. *Walden*, 380 Mass. 724, 732 (1980); *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973)." *Commonwealth* v. *Connor*, 392 Mass. 838, 852 (1984). "Whether evidence is legally relevant, however, is a question generally left in close calls to the discretion of the trial judge." *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985), citing *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981). Certainly if the defendant's identification was a contested issue at trial, Officer Donnellan's prior knowledge of the defendant from prior experiences with him was relevant, even perhaps to the details of those experiences. Here, however, the issue of the defendant's identification was not a live issue — indeed, defense counsel said as much during the exchange with the judge, consistent with his opening statement and his cross-examination of the officers. Instead, the defense focused on the officers' "instigation" of the offense and their right to follow the defendant away from the territorial jurisdiction of Boston University Medical Center where they were employed as officers, and to build their case against him from their extraterritorial observations. Nevertheless, given the overwhelming evidence of four hand-to-hand drug transactions between the same undercover detective and the defendant, witnessed by another officer who knew the defendant, and the manner in which the case was defended, we consider that the defendant was not significantly

gentlemen, such evidence was submitted by me and may be considered by you only for very limited purpose. That is insofar as it bears upon credibility of the identification by that witness of this defendant. The evidence may not be considered by you as evidence tending to show that the defendant has a bad character or that he has a propensity or tendency to commit criminal acts. The fact is the only matter for which the defendant is on trial are the matters before you. Those matters are entitled to your individual consideration in this case. Based only on the evidence and on the law, nothing else."

prejudiced. See *Commonwealth* v. *Jenner*, 426 Mass. 163, 165 (1997) (although it was error to admit statements, the error did not significantly prejudice defendant where there was ample evidence allowing the jury to find the defendant guilty); *Commonwealth* v. *Durango*, 47 Mass. App. Ct. 185, 189 (1999) ("[T]he admission of the evidence did not constitute prejudicial error requiring reversal. The Commonwealth's case was overwhelmingly strong. . . . We think that the jury's verdict was not affected by the [erroneously admitted] evidence"). This is not to say that we condone the manner in which the information came into the jury's possession. Indeed, our approval of the judge's decision to allow this question to be answered, given the subject, was not without some reservation.

The subject of juror questions was most recently discussed in the case of *Commonwealth* v. *Britto*, 433 Mass. 596 (2001). While juror questions in that case did not prejudicially affect that trial, the "case nevertheless illustrates some of the difficulties that can arise when questions are solicited from jurors." *Id.* at 612. We have expressed concern that "allowing jurors to question witnesses has the potential for introducing prejudice, delay, and error into the trial." *Id.* at 612-613, quoting from *Commonwealth* v. *Urena*, 417 Mass. 692, 701 (1994).

"It bears emphasizing that the decision to allow juror questioning and the manner of questioning rests in the sound discretion of the trial judge." *Id.* at 613. However, that discretion must not be abdicated. In *Britto*, the Supreme Judicial Court cautioned "that the jury also be instructed not to let themselves become aligned with any party, and that their questions should not be directed at helping or responding to any party. Rather, they must remain neutral and impartial, and not assume the role of investigator or of advocate." *Ibid.* Further, "[t]he judge should 'emphasize[] to jurors that, although they are not expected to understand the technical rules of evidence, their questions must comply with those rules, and so the judge may have to alter or to refuse a particular question.' " *Ibid.*, quoting from *Urena, supra* at 702.

Here, the judge originally ruled that the officer should not reveal that he had worked at the house of correction, implying that the evidence would be overly prejudicial. However, the judge reversed himself, solely, it seems, as a result of juror questions.

The posture of the defendant's identification had not changed between the judge's first order, excluding the employment reference, and the latter ruling, permitting the question to be answered.

We believe that under these circumstances, a better course would have been for the judge to exercise his discretion and decline the question. As the issue of the witness's credibility on the defendant's identification was not being challenged, the details of the officer's prior employment had no bearing on the determination of the defendant's guilt or innocence. As cautioned by *Britto* and *Urena, supra,* juror questions should not be given disproportionate weight; a judge should not allow juror questions that are inconsistent with the rules of evidence or, certainly, the defendant's due process rights. In this case, the judge's concern about fairness to the jurors appears to have outweighed the need for appropriate balancing of relevance against prejudice. By permitting the question to be asked, the judge risked a realization of the potential for prejudice, cautioned by *Urena, supra,* which, in a closer case, might have required a retrial.

3. *Drug certificates.* Finally, the defendant claims that the admission of the drug certificates violated his Sixth Amendment right to confront the witnesses against him. Since there was no objection at trial, we examine the issue to determine whether a substantial risk of a miscarriage of justice was created. *Commonwealth* v. *Verde,* 444 Mass. 279, 282-285 (2005), controls on this issue, and under that case, the Supreme Judicial Court decided that drug certificates were business records and thus did not implicate the confrontation clause. Since there was no dispute at trial over the nature of the substances, we do not believe that the introduction of this evidence caused justice to miscarry.[9]

*Judgments affirmed.*

[9]Since November 10, 2008, the United States Supreme Court has had under advisement the case of *Commonwealth* v. *Melendez-Diaz,* 69 Mass. App. Ct. 1114 (2007), cert. granted, 128 S. Ct. 1647 (2008). At issue is whether the admission of forensic science certificates, as prima facie evidence of the primary facts stated therein, runs afoul of *Crawford* v. *Washington,* 541 U.S. 36 (2004). However, even if the Supreme Court decides that the drug certificates violate the confrontation clause, such a holding does not alter our analysis that the admission of the drug certificates did not create a substantial risk of a miscarriage of justice.